STATE OF CONNECTICUT *v.* NATHANIEL J. CARTER
(10149)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued January 12—decision released April 5, 1983

*Eugene J. Riccio,* assistant public defender, for the appellant (defendant).

*Jonathan C. Benedict,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

SHEA, J.  The defendant in this case was also the defendant in *State* v. *Carter,* 189 Conn. 611, 458 A.2d 369 (1983) (*Carter I*), where we set aside his conviction on a count of burglary in the first degree and remanded for further proceedings, but affirmed his conviction of sexual assault in the first degree in violation of General Statutes § 53a-70 (a).  About one month after the trial of *Carter I,* the defendant was tried before a jury on a separate information and was found guilty of burglary in the second degree, General Statutes § 53a-102 (a), and of sexual assault in the first degree, General Statutes § 53a-70 (a), based upon an incident which occurred on April 23, 1979, about three weeks prior to the date of the *Carter I* offenses.  In his appeal from the judgment, the defendant has raised some issues involving the lawfulness of the action of the police in stopping and detaining him.  We have discussed these claims fully and resolved them against him in *Carter I.* Additionally he assigns error (1) in the admission of a confession, which followed the two confessions referred to in *Carter I,* and which is claimed to have been involuntary; (2) in allowing the use of an earlier confession to an unrelated crime to impeach him; (3) in permitting his prior convictions for similar crimes, including those in *Carter I,* to be used for impeachment; (4) in charging the jury upon some provisions of § 53a-70 (a) which were not within the scope of the offense as alleged in the information; and (5) in failing to give a requested instruction upon the effect of a prior inconsistent statement.  We find error only in the use of the sexual assault conviction in *Carter I* for the purpose of impeachment.

The complainant was a widow seventy-seven years old who had recently returned to her home

in Greenwich after a period of hospitalization for surgery. She testified that she had been asleep in her upstairs bedroom until some time after midnight when someone bounced on the bed and clamped a hand over her face, saying "Don't scream or I'll kill you." Her assailant then grabbed her throat and repeated this threat. He proceeded to rape the complainant. After the assault she discovered that her face was bleeding. There was no illumination in the bedroom and the assailant kept his face covered with a towel. The complainant could describe her assailant only as a black male about twenty-five or twenty-six years old and about five feet ten or eleven inches in height with "short hair brushed up" and a "very nice voice." The defendant was identified as the perpetrator of the offense only by the admission of his confession into evidence.

In *Carter I* we detailed the circumstances which led the police to accost the defendant as he was riding his bicycle on River Road, Greenwich, at about 3:10 a.m. on May 31, 1979, and to hold him for a brief period of time as a suspect in connection with a very recent burglary of a residence in the vicinity. We found no illegality in that detention or in his arrest for that burglary, which was made after the tread of the sneakers worn by the defendant was found by the police to match a footprint discovered within the residence. Accordingly, we rejected the defendant's claim that his confessions to three separate crimes made subsequent to his arrest were the product of an unlawful seizure of his person and should be suppressed on that ground. See *Dunaway* v. *New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); *Brown* v. *Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). As the defendant concedes, the dis-

position of *Carter I* has removed that basis for claiming that either of the two confessions used against him at the trial in the present case was improperly admitted.

## I

The defendant claims involuntariness as an additional ground for excluding his confession to the crimes of April 23, 1979, for which he has been convicted in this case. In *Carter I* we examined a similar claim which was made with respect to his confession to the offenses of May 16, 1979, for which he was convicted in that case. We concluded that the evidence adequately supported the finding of the trial court that the defendant had knowingly and voluntarily waived his constitutional right against self-incrimination. In reviewing the circumstances leading to that confession we described how the defendant, after being warned of his rights pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and being interrogated for less than one hour, confessed, at about 5:30 a.m., to the burglary of a house on Cary Road, Greenwich, on May 31, 1979, for which he had been arrested initially. After that confession, which included a detailed acknowledgement of the *Miranda* warning, had been executed, the questioning of the defendant by two Greenwich police officers continued for approximately three hours. At about 8:45 a.m. the defendant confessed to the burglary and sexual assault of May 16, 1979, and executed a second written confession, which contained a similar *Miranda* warning form.

We resume our narrative of the circumstances of the interrogation of the defendant by Officers Roland H. Hennessey and Theodore J. Brosko in

a room at the Greenwich police station at the point where the defendant had finished signing the second confession, which Brosko had begun to type at 8:45 a.m. The defendant wrote a note on his confession stating that he had voluntarily turned himself in to the police and that he needed "help from someone."[1] He had previously mentioned that "he needed help because he kept doing this" and, after giving the second confession, he said that he must have been sick to have committed such a crime. In response, Hennessey promised to speak to a judge and a prosecutor in order to obtain some kind of psychological assistance for the defendant. Later that day, after the interrogation had ended, Hennessey did fulfill his promise to attempt to obtain such aid.

After completion of the second confession the officers began to question the defendant about a burglary—rape incident which had occurred in Greenwich on April 23, 1979, which was similar in many respects to the May 31, 1979 occurrence described in the second confession. At 11:30 a.m., after about two and one half hours had elapsed, Brosko began to type a third confession of the defendant in which he admitted his involvement in the crimes of April 23, 1979, with which he was charged in this case. This confession also contained the standard *Miranda* warning, each paragraph of which the defendant initialed after reading it aloud. The defendant executed this confession with the same formalities observed for his two earlier con-

---

[1] The handwritten note appears in the confession below the signatures of the defendant and the two officers, one of whom subscribed as a witness and the other as the authority administering an oath. The text is as follows: "I, Nathaniel Carter, volunteered and turned myself in to two officers riding in a police car. I need help from someone."

fessions. At some time between the second and third confessions, coffee, milk and sandwiches were brought into the room and the defendant ate something. He appeared sleepy and tired at a point near the end of the interrogation, but never requested that the questioning be terminated. He spoke intelligibly, did not appear to be under the influence of alcohol or drugs, and did not mention his injured leg until after the confessions had been completed. At one point during the interview he said he was chilly, but he made no other complaints concerning his physical or mental condition.

In reaching our conclusion in *Carter I* that there was no infirmity in obtaining the first and second confessions of the defendant, we rejected his claims of coercion based upon the duration and circumstances of the interrogation, impairment of his mental condition resulting from drugs and alcohol, pain and fatigue affecting his physical condition, and inducement arising from a promise of psychiatric treatment which we concluded was not made until after the second confession. The same grounds are relied upon in attacking his third confession, but in the context of two additional circumstances which did not confront us in *Carter I*: (1) the continued two and one half hours of interrogation which transpired between the second and third confessions, and (2) the promise of an attempt to secure "help" for the defendant which unquestionably was made before the third confession. Except for these additional circumstances, our discussion in *Carter I* of the admissibility of the second confession is also applicable to the third confession.

The defendant had been under detention about eight hours before giving his third confession, of

which about seven hours were devoted to conversing with Hennessy and Brosko and to typing his first two statements. This period, though substantial in duration, does not remotely approach the length of those interrogations held to be so objectionable on that ground among others as to warrant reversal of a finding by a trial court that a confession was voluntary. See *Darwin* v. *Connecticut,* 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (1968) (thirty to forty-eight hours); *Clewis* v. *Texas,* 386 U.S. 707, 87 S. Ct. 1338, 18 L. Ed. 2d 423 (1967) (thirty-eight hours questioning); *Davis* v. *North Carolina,* 384 U.S. 737, 86 S. Ct. 1761, 16 L. Ed. 2d 895 (1966) (sixteen days); *Culombe* v. *Connecticut,* 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961) (five days); *Reck* v. *Pate,* 367 U.S. 433, 81 S. Ct. 1541, 6 L. Ed. 2d 948 (1961) (four days). The fact that the police were inquiring about three separate incidents affords an explanation of the duration of the entire period of questioning. The interrogation concerning no one of the crimes exceeded three hours. The trier could reasonably have credited the testimony of the police officers that the defendant at no time requested the interview to cease, that the ordinary physical comforts were made available to him, and that, despite some sleepiness observed near the end of the conversation with the police, he was alert and responsive. We are not persuaded that the additional two and one half hours of questioning, which preceded the third confession, requires a different result in respect to the admissibility of that confession from that reached concerning the second confession in *Carter I.*

We must now consider whether the promise made by Hennessey to seek psychological aid for the

defendant might reasonably have induced him to give the third confession, as he maintains. " 'A confession can never be received in evidence where the prisoner had been influenced by any threat or promise.' " *Bram* v. *United States,* 168 U.S. 532, 543, 18 S. Ct. 183, 42 L. Ed. 568 (1897) (quoting 3 Russell on Crimes [6th Ed.] 478) ; see *Malloy* v. *Hogan,* 378 U.S. 1, 7, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). The promise of Hennessey was not conditioned upon any action by the defendant and appears to have been made after he had given the second confession, but before the interrogation about the crimes of April 23, 1979, began. No further reference to the promise was made in the two and one half hours which elapsed before the defendant decided to confess to those crimes. The nature of the promise, to attempt to obtain psychiatric assistance for his behavioral problem through the criminal justice system, could hardly have raised expectations of leniency on the part of the defendant, who had previous experience with the system. The trier was not bound to conclude that Hennessey's promise was of any significance in the defendant's decision to confess. From our review we find no reason to overturn the finding of the trial court that his third confession was voluntary.

## II

The defendant next claims error in the admission of his first confession, which pertains to the burglary of a house on Cary Road, Greenwich, on May 31, 1979, and was the basis for his arrest soon after that crime occurred. This confession was admitted as a prior inconsistent statement after the defendant, who took the witness stand in order to attack the truthfulness of his confession to the crimes of April 23, 1979, had testified that in

bicycling from Port Chester to his home in Stamford just before his arrest he had travelled all the way on the Post Road and did not leave it until he turned onto River Road, where he met two police officers about forty yards south of the intersection. This testimony was inconsistent with a statement in his confession that he had left the Post Road and had ridden down Cary Road where he broke into a residence. The defendant objected to the use of the confession upon the grounds that it brought before the jury evidence of an unrelated crime for which he had not then been convicted and that its prejudicial effect outweighed its probative value. The trial court overruled this objection.

"That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material." *State* v. *Simborski,* 120 Conn. 624, 631, 182 A. 221 (1936). "The fact that such evidence does not merely show criminal tendencies but is significant in proving some of the issues in a case does not alone justify its admission. The court must also balance its probative value against its prejudicial tendency." *State* v. *Nardini,* 187 Conn. 513, 519–20, 447 A.2d 396 (1982); *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982). The credibility of the defendant was a highly important issue at the trial. Confronting him on the witness stand with his signed statement contradicting his testimony was a valuable and standard method of attacking his credibility. The nature of the crime involved, an unsuccessful burglary, was not so despicable as to inflame or seriously prejudice the jury. The trial court did not abuse its discretion in concluding that the probative value of the evidence outweighed its

prejudicial effect. The court later included in the charge an instruction to the jury concerning the limited purpose of this evidence.

We shall not address a further claim of the defendant that only the portion of the first confession which contained the inconsistent statement should have been admitted. As the defendant concedes, no such claim was raised in the trial court. See *Mucci* v. *LeMonte,* 157 Conn. 566, 570, 254 A.2d 879 (1969).

## III

The defendant filed a motion for permission to testify without being subject to impeachment on the basis of his prior felony convictions, claiming that the resulting prejudice would outweigh any probative value they might have upon the issue of his credibility. Before the defendant took the stand, his counsel indicated that he had advised the defendant not to testify but that the defendant insisted upon doing so. The trial court stated that it was inclined to deny the motion, but deferred a final ruling until cross-examination of the defendant. After the defendant had completed his direct testimony, which related mainly to the circumstances leading up to his signing the third confession, which he claimed to have been coerced by the police, the court ruled that his prior felony convictions could be used to impeach him. During cross-examination the defendant admitted that he had been convicted of burglary with violence in December, 1971, and of burglary in the first degree and sexual assault in the first degree in December, 1979,[2] about one month before trial.

[2] These convictions were the subject of the appeal in *Carter I.* The defendant has never raised the pendency of an appeal from those convictions as a ground for barring their use for impeach-

The defendant does not contend that any of the convictions used at the trial did not qualify for admissibility under General Statutes § 52-145, which we have construed to permit impeachment only where the crime involved is punishable by imprisonment for more than one year. *State* v. *Nardini,* 187 Conn. 513, 521, 447 A.2d 396 (1982); *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341 (1965). "We have recognized, however, that the inherent authority of the trial court to exclude evidence where its prejudicial tendency outweighs its probative value is particularly applicable to prior convictions otherwise qualifying for admission." *State* v. *Nardini,* supra, 521. " 'This balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a lee-way of discretion is generally recognized.' McCormick, Evidence [1st Ed.] pp. 319–20." *State* v. *Bitting,* 162 Conn. 1, 10, 291 A.2d 240 (1971).

Despite our deference to trial court discretion in this area, we have upon two recent occasions found error in the admission of convictions extremely remote in time and having no great relevance upon the issue of credibility. *State* v. *Iasevoli,* 188 Conn. 325, 326–29, 449 A.2d 996 (1982); *State* v. *Nardini,* supra, 530. The defendant makes no claim of remoteness, but relies wholly upon the substantial prejudice generated by evidence of crimes of the same nature as those under consideration at the trial. "Where the prior crime is quite similar to the offense being tried, a high degree of prejudice

ment. See *United States* v. *Soles,* 482 F.2d 105, 108, cert. denied, 414 U.S. 1027, 94 S. Ct. 455, 38 L. Ed. 2d 319 (1973); annot., 16 A.L.R.3d 726.

is created and a strong showing of probative value would be necessary to warrant admissibility." *State* v. *Nardini, supra,* 522.

With respect to the convictions of the defendant in 1971 and 1979 for burglary,[3] a crime often associated with larceny, there is authority for the view that those crimes imply dishonesty in a general sense and, therefore, have a more direct bearing on credibility than a crime of violence. *United States* v. *Brown,* 603 F.2d 1022, 1029 (1st Cir. 1979); *United States* v. *Bianco,* 419 F. Sup. 507, 509 (E.D. Pa. 1976), aff'd, 547 F.2d 1164 (3d Cir. 1977); *State* v. *Nardini, supra,* 526. It was, therefore, not unreasonable for the court to conclude that these convictions had enough probative significance upon the credibility of the defendant to outweigh the prejudice arising from the similarity of those crimes to the burglary charge in this case.

We find, however, that we cannot justify the use of the very recent conviction of the defendant for the identical charge of sexual assault in the first degree of which he was also accused in this case. It is still our view that a trial court may reasonably determine that a conviction of any serious crime indicates bad character generally, which alone will support an inference of a disposition to prevaricate. *State* v. *Nardini, supra,* 523–25; General Statutes § 52-145; see Fed. R. Evid. 609(a); Unif. R. Evid. 609, 13 U.L.A. 276 (1980). It was, nevertheless, unreasonable for the trial court to attribute to the sexual assault conviction such great probative value on the issue of credibility as to outweigh the extraordinary prejudice which must have arisen once the jury learned that this defendant had been

[3] It should be noted that the 1979 burglary conviction of the defendant has been set aside by our opinion in *Carter I.*

convicted of a similar sexual assault offense the month before. "Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968). That pressure must have been extreme when the past conviction for a similar crime was so recent and for so infamous a crime as that involved here. "Where the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." *State* v. *Nardini,* supra, 522.

A conviction for a violent crime, such as sexual assault, has no direct bearing upon veracity but may indicate a bad general character from which a readiness to lie may be inferred. *State* v. *Nardini,* supra, 523–24. Such a conviction, however, does not have the special probative value on the issue of credibility which a conviction of a crime involving dishonesty would carry. Under all the circumstances, we conclude that the extraordinary prejudice generated by the recent sexual assault conviction of the defendant clearly outweighed the significance of that conviction on the truthfulness of the defendant. The trial court abused its discretion in finding to the contrary.

## IV

Since our finding of error in part III necessitates a new trial, we discuss the remaining claims of error only to the extent that similar problems may arise at a new trial.

## A

The second count of the information, charging the defendant with sexual assault in the first degree, alleged that he had compelled the victim "to engage in sexual intercourse by threat of use of force against [her] which reasonably caused [her] to fear physical injury" in violation of General Statutes (Rev. to 1979) § 53a-70 (a) (2). In its instructions the court read § 53a-70 (a) (2) in its entirety to the jury, which provides that sexual assault in the first degree may be committed either "by use of force" or "by the threat of the use of force" against the victim. The court discussed both the use of force and the threat of the use of force, defining the terms used and referring generally to the testimony of the victim in regard to each of these alternative elements of the crime. The defendant took exception to several portions of the charge, including "the Court's instructions regarding any elements of sexual assault in the first degree outside the threat of the use of force."

We have disapproved the practice of reading an entire statute to a jury where under the pleadings or the evidence only a portion of it is applicable. *State* v. *Ruiz,* 171 Conn. 264, 269–72, 368 A.2d 222 (1976); *State* v. *Criscuolo,* 159 Conn. 175, 177, 268 A.2d 374 (1970). The likelihood of confusion in such a situation was demonstrated in *Carter I,* where we found that the possibility of harm from reading statutory provisions not encompassed within the information had been removed as a result of the responses given by the jury to interrogatories designed to clarify their verdict.

Here the court not only read the inapplicable portion of the statute relating to the "use of force"

but also discussed this alternative mode for commission of the crime, effectively enlarging the offense as stated in the information.

The function of an accusatory pleading such as an information is to inform a defendant of "the nature and cause of the accusation" as required by our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I § 8. The statement of the offense in the information with sufficient definiteness and particularity to comply with the constitutional requirement not only enables an accused to prepare his defense adequately, but serves also to insure against a future prosecution for the same offense. *State* v. *Ballas,* 180 Conn. 662, 664, 433 A.2d 989 (1980); *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979). Since we are dealing in this case with an information rather than an indictment, we are not concerned with another constitutional role the requirement of specificity in the charge has been said to perform in protecting the right to a preliminary determination by a grand jury of the viability of a prosecution for certain offenses. See *Stirone* v. *United States,* 361 U.S. 212, 217-18, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960); *United States* v. *Salinas,* 654 F.2d 319, 324 (5th Cir. 1981); *United States* v. *Carlson,* 616 F.2d 446, 448 (9th Cir. 1980).

Because there must be a new trial we need not consider whether the brief exception taken by the defendant was sufficient to comply with Practice Book § 854, which requires that counsel in excepting to a charge "state distinctly the matter objected to and the ground of the exception," or whether this error of the trial court is cognizable even in the absence of a proper exception because it may have

deprived the defendant of a fundamental constitutional right. *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973).

## B

In the course of the charge on the credibility of witnesses, the trial court referred to the confession of the defendant to the burglary of a house on Cary Road which had been introduced as an exhibit. The court instructed: "The only purpose of the admission of that in evidence was to show prior inconsistent statements on the part of the accused. Other than that, ladies and gentlemen of the jury, it has no bearing in this case. So, just look at that Exhibit for that purpose and that purpose alone."

The defendant claims that this charge failed to inform the jury that the first confession could not be considered as evidence that the defendant had committed the present offense as he had requested. Immediately preceding the portion of the charge recited above, the court had given an instruction upon the limited purpose for which the criminal record of the defendant had been introduced. This instruction properly restricted the use of his convictions to the issue of credibility of the defendant, but also contained broader language that "[e]vidence of the commission of another crime other than the one charged is not admissible to prove the guilt of the accused in this particular case." This statement substantially complied with the defendant's request and in relation to the instruction closely following, that the confession to the Cary Road burglary had been admitted only to show a prior inconsistent statement and should be used for that purpose alone, adequately informed the jury that the first confession would not justify a

conviction of the present offenses. That the defendant himself thought it accomplished that purpose is indicated by his omission of any reference to this part of the charge in excepting to the omission of other portions of his request to charge.

There is error in the admission into evidence of the prior sexual assault conviction of the defendant, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.