STATE OF CONNECTICUT *v.* JOHN D. TOWNSEND
(13175)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued February 4—decision released March 22, 1988

*Jon C. Blue,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, were *Kevin McMahon* and *James G. Clark,* assistant state's attorneys, for the appellee (state).

PER CURIAM. The defendant, John D. Townsend, appeals from his conviction, after a trial by jury, of the crime of robbery in the first degree in violation of General Statutes §§ 53a-133[1] and 53a-134 (a) (4).[2] As a consequence of this conviction, the defendant pled guilty to the charge of being a persistent dangerous felony offender under General Statutes § 53a-40 (a).[3] We find no reversible error in the defendant's robbery conviction.

---

[1] General Statutes § 53a-133 provides: "ROBBERY DEFINED. A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[2] General Statutes § 53a-134 (a) provides in relevant part: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged."

[3] General Statutes § 53a-40 (a) provides: "PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. (a) A persistent dangerous

The jury could reasonably have found the following facts. On the evening of August 14, 1985, the defendant entered a Windsor convenience store. Brandishing a gun, he forced a clerk to open the store's cash drawer, whose contents he appropriated, and to hand over bags of money kept under the store counter. Some days later, the defendant returned to the store at a time when the clerk was there with another employee. The clerk told her fellow worker that the defendant was the person who had robbed her.

At the defendant's trial, the state offered only two witnesses. The clerk testified about the circumstances of the crime and made an in-court identification of the defendant as the person who had committed the robbery. Over objection by the defendant, Windsor police detective John Parlapiano, Jr., testified that he had shown the clerk eight color photographs from which she had selected that of the defendant as depicting the man who had robbed her. The defendant neither testified nor put on any other testimony in his own behalf.

felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2)."

The trial court denied motions of acquittal filed by the defendant both at the end of the state's case and after the jury's verdict finding him guilty of robbery as charged. On appeal, the defendant alleges that the trial court erred: (1) in permitting Parlapiano's testimony concerning the clerk's out-of-court photographic identification of the defendant; (2) in instructing the jury about the defendant's failure to testify; and (3) in instructing the jury about the charge of larceny.

The defendant's challenge to Parlapiano's testimony concerning the clerk's out-of-court photographic identification of the defendant cannot be sustained in light of our recent decision in *State* v. *Weidenhof,* 205 Conn. 262, 533 A.2d 545 (1987). There, as here, the victim of a crime made an in-court identification that was corroborated by a police officer's testimony of an out-of-court identification consisting of the victim's selection of the defendant's picture from a photo array. Relying on *State* v. *McClendon,* 199 Conn. 5, 11, 505 A.2d 685 (1986), and *State* v. *Frost,* 105 Conn. 326, 341, 135 A. 446 (1926), we held that such testimony comes within an exception to the hearsay rule for testimony that is reliable and can be tested by cross-examination of the relevant witnesses. *State* v. *Weidenhof,* supra, 274. There, as here, "[t]he defendant has not challenged the underlying reliability of the victim's out-of-court identifications and had ample opportunity to cross-examine both the victim and [the police officer]." Id.

The defendant next contests the propriety of the trial court's instruction to the jury concerning the defendant's failure to testify. In such circumstances, General Statutes § 54-84 (b) requires a court, in the absence of a contrary request by the accused, to instruct the jury "that they may draw no unfavorable inferences from the accused's failure to testify."[4] Instead of using the

---

[4] General Statutes § 54-84 provides: "TESTIMONY OR SILENCE OF ACCUSED. (a) Any person on trial for crime shall be a competent witness,

statutory language verbatim, the trial court charged the jury: "I would warn you at this time that you can draw no inference, which means you cannot discuss or otherwise consider his reasons for not testifying." The defendant maintains that this instruction is fatally defective because the jury might have understood it as prohibiting only group discussion without forbidding any juror's private consideration of the defendant's decision not to testify. The state, while conceding that the court's departure from the literal mandate of § 54-84 (b) was erroneous, urges us to hold the court's phraseology to be a minor and harmless deviation that does not constitute reversible error.

At the outset, we note that we have repeatedly held that a claim of trial court noncompliance with § 54-84 (b) is reviewable on appeal even though a defendant, as in this case, did not at trial except to the charge as given. The statute "serves to effectuate the fundamental constitutional right of a defendant not to testify in his criminal trial"; *State* v. *Sinclair*, 197 Conn. 574, 582, 500 A.2d 539 (1985); and it is "plain error for a trial judge not to comply with [its] mandate." *State* v. *Tatem*, 194 Conn. 594, 595–96, 483 A.2d 1087 (1984).

Judicial noncompliance with § 54-84 (b) does not, however, automatically warrant a reversal and a new trial. We must decide, on a case by case basis, whether a trial court's failure fully to comply with the statute was harmless. *State* v. *Cobb*, 199 Conn. 322, 324–25, 507

and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

A.2d 457 (1986). Because such an error is of constitutional dimension, "[t]he applicable test requires the state to prove beyond a reasonable doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled." *State* v. *Sinclair,* supra, 584; *State* v. *Cobb,* supra, 325; *State* v. *Tatem,* supra, 599. In the present context, the state must show that the charge as given conveyed to the jury the substantive meaning of the statutory requirement. *State* v. *Cobb,* supra; *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985).

Examining the charge in this case from this perspective, we conclude that the trial court's minor deviation from the literal wording of § 54-84 (b) was harmless error. We are persuaded that it was not reasonably possible that the jury would have understood the court to be permitting any inferences whatsoever to be drawn from the defendant's failure to testify. If there was any latent ambiguity in the instruction forbidding either group discussion or individual consideration of the reasons for the defendant's not testifying, that ambiguity was dispelled by the very next sentence in the court's instructions, which reminded the jury: "Your determination must be made solely on the basis of whether or not the State has sustained its burden of proof, as previously discussed."

The defendant's final claim of error relates to the trial court's charge on larceny. Because robbery is the commission of larceny by force, the trial court was required to define the meaning of larceny for the jury. In so doing, the court read the statutory definition of larceny in General Statutes § 53a-119, without excising those parts that had no factual relevance to the present trial. The court thus instructed the jury that "[a] person commits larceny, when with intent to deprive another of property, or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds

such property from an owner," even though there was no evidence of the involvement of a third person and only circumstantial evidence, if any, of the withholding of property. The defendant did not take an exception to this charge at trial.

We have repeatedly disapproved of a trial court's reading of an entire statute when the defendant has been formally charged under less than the statute as a whole. *State* v. *Franko,* 199 Conn. 481, 493, 508 A.2d 22 (1986); *State* v. *Carter,* 189 Conn. 631, 645, 458 A.2d 379 (1983). In this case, however, the information did not specify those aspects of the underlying charge of larceny on which the state was relying. The defendant has pointed to no prejudice attributable to the court's over-inclusive instruction, which did not adversely implicate a specific element of the crime with which he was charged. It is, therefore, doubtful that the alleged error in this case is reviewable when it was not raised at trial. Compare *State* v. *Williams,* 202 Conn. 349, 362–64, 521 A.2d 150 (1987), with *State* v. *Franko,* supra.

Even if this claim of error is properly here, it cannot be sustained on its merits. After its reading of the larceny statute, the trial court limited its applicability to the facts before the jury. The jury was told: "So what the state has to prove [is] basically . . . three elements: that there was a larceny by force, and there was testimony by the complaining witness . . . that there was a taking of money from the register by the robber, the person who committed the crime, and the taking of money would fit within the description of a larceny, if you find that she had a superior right to it over the person who took it." Viewing this charge as a whole, we conclude there was no reasonable possibility that the jury was misled into mistaking the issues that it was to resolve. *State* v. *Simms,* 201 Conn. 395, 416, 518 A.2d 35 (1986).

There is no error.