STATE OF CONNECTICUT *v.* ALBERT EADDY
(6298)
(6576)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 10—decision released September 20, 1988

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, was *Robert Devlin,* former assistant state's attorney, for the appellee (state).

SPALLONE, J. This opinion addresses two appeals filed by the defendant. The first appeal is from the judgment of conviction, rendered after a jury trial, of the crime of robbery in the second degree in violation of General Statutes § 53a-135 (a) (1). In the second appeal, the defendant appeals from his conviction of violation of probation; General Statutes § 53a-32; based upon the conviction of the crime of robbery.

In his first appeal, the defendant claims that the trial court erred (1) in charging the jury under General Stat-

utes § 54-84 (b) on his failure to testify, (2) in its instructions to the jury on a statutory alternative for the underlying crime of larceny when there was no evidence offered by the state in support thereof, and (3) by allowing the prosecutor, during both cross-examination and closing argument, to impeach the defendant's sole alibi witness by referring to her alleged pretrial silence.

The jury could reasonably have found the following facts. In the early morning hours of Tuesday, November 25, 1986, the victim, Lee Crenshaw, and two friends were driving around New Haven in Crenshaw's rented automobile. Sometime between 1 and 2 a.m., Crenshaw drove to the Brown Projects, an apartment complex located at 1134 Quinnipiac Avenue in New Haven, to visit a young woman named Brenda Taylor. Crenshaw and Taylor talked at the door of Taylor's apartment for a few minutes. During the course of the conversation, Crenshaw displayed to Taylor a roll of money containing $400, which Crenshaw had received from his former employer. Taylor asked if she could borrow $10, but Crenshaw had nothing smaller than a $20 bill, except for a few $1 bills. He arranged with Taylor to return later.

Crenshaw and his friends then drove around for several more hours. During the ride, Crenshaw got change for a $20 bill from one of his friends. After dropping off his companions, he drove back to the Brown Projects, arriving there sometime between 5 and 5:45 a.m. He parked his car in the parking lot designated for use by the tenants of the project and located close to an alleyway leading to Taylor's apartment.

Crenshaw walked to the apartment and knocked on the door. The door was opened by the defendant, Taylor's brother, whom Crenshaw knew as "Cleecko" and with whom Crenshaw had had a previous encoun-

ter at the home of Taylor's grandmother. Crenshaw recognized the defendant as the same person he had seen at the grandmother's house.

Crenshaw asked the defendant if Taylor was home. The defendant called to her and then left. After conversing briefly in the doorway, Crenshaw suggested that he and Taylor sit in his car, which they did. After sitting and talking in the car for approximately five minutes, Crenshaw and Taylor were interrupted by a man who opened Crenshaw's door and stated, "You messing with my girl." As the man said this, he punched Crenshaw twice in the jaw and then bent over and grabbed Crenshaw's arms below the elbows, effectively pinning his arms to his sides.

Taylor exited the car and Crenshaw heard her call the name "Cleecko." While his arms were being held, Crenshaw's car seat moved and he felt a second individual searching his pockets. By the dome light, which had gone on when the car door was opened, he recognized the defendant as the person searching his pockets. The defendant searched until he found and extracted the roll of bills from Crenshaw's pocket, at which time the defendant exclaimed, "I got it." The defendant and his companion left the car and ran down the alley in the direction of Taylor's apartment.

Crenshaw started the car and drove a few hundred feet down Quinnipiac Avenue hoping to get another look at his assailants. Having no success, he returned to Taylor's apartment and briefly spoke with her. While driving home, Crenshaw saw a friend and told him that he had been robbed. Crenshaw returned home a little after 7 a.m. He called the police and talked to Officer Robert Malone. After Crenshaw had described the incident, stating that he had been robbed by a man nicknamed "Cleecko," Malone and Crenshaw drove to the Brown Projects. Malone interviewed Taylor, asking her

if she had been with the victim during the robbery, whether she knew "Cleecko," whether he was currently in the apartment and whether she knew where he lived. Taylor did not give the officer any of the requested information and finally refused to answer any questions. When Malone asked the defendant's mother, who was then present, what "Cleecko's" real name was, she ignored him.

Malone then took Crenshaw to police headquarters, where Crenshaw viewed approximately 1000 photographs before he identified one of the defendant. Crenshaw told the detective that he was "positive" of his identification. Crenshaw eventually made an in-court identification of the defendant and stated that he was "absolutely certain" of his identification.

The defendant was arrested, charged with and found guilty by a jury of robbery in the second degree. Following that conviction, the defendant was found in violation of his probation.

In his first claim of error in the first appeal, the defendant contends that the trial court erred in its charge to the jury regarding the defendant's failure to testify, by deviating from the exact language of General Statutes § 54-84 (b).[1] The defendant contends that the jury might have interpreted the court's instruction as prohibiting group discussion of the defendant's elec-

[1] "[General Statutes] Sec. 54-84. TESTIMONY OR SILENCE OF ACCUSED. (a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

tion not to testify, without forbidding any juror's private consideration of the defendant's election not to testify.[2]

Our Supreme Court recently has decided that language in a charge similar to that used here is indeed erroneous. *State* v. *Townsend,* 206 Conn. 621, 539 A.2d 114 (1988) (per curiam). "Judicial noncompliance with § 54-84 (b) does not, however, automatically warrant a reversal and a new trial. We must decide, on a case by case basis, whether a trial court's failure fully to comply with the statute was harmless. *State* v. *Cobb,* 199 Conn. 322, 324–25, 507 A.2d 457 (1986). Because such an error is of constitutional dimension, '[t]he applicable test requires the state to prove beyond doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled.' *State* v. *Sinclair,* [197 Conn. 574, 584, 500 A.2d 539 (1985)]; *State* v. *Cobb,* supra, 325; *State* v. *Tatem,* [194 Conn. 594, 599, 483 A.2d 1087 (1984)]. In the present context, the state must show that the charge as given conveyed to the jury the substantive meaning of the statutory requirement. *State* v. *Cobb,* supra; *State* v. *Marra,* 195 Conn. 421, 433, 489 A.2d 350 (1985)." *State* v. *Townsend,* supra, 625–26.

Our analysis of the charge in this case and the pertinent charge given in *Townsend* indicates that the instruction as given here fully comports with the principles outlined in *Townsend.* "[I]t was not reasonably possible that the jury would have understood the court to be permitting any inferences whatsoever to be drawn

---

[2] The trial court instructed the jury: "Now, as you know in this case, the Defendant did not testify. And a Defendant is under no obligation to take the witness stand and to testify. And no presumption of guilt may be related simply to the fact that he did not testify. Nor may you draw any unfavorable inference from the fact that he did not testify. You must not permit such a fact to weigh in the slightest degree against the Defendant, nor should it enter into your discussions or deliberations."

from the defendant's failure to testify." Id., 626. We hold that the instruction given by the trial court substantially conformed to the dictates of General Statutes § 54-84 (b) in content, intent and spirit and, therefore, the error was harmless. The assertions of the defendant to the contrary are more concerned with semantics than substance.

In his second claim of error, the defendant argues that the trial court erred in its charge to the jury on the crime of larceny. Because larceny is the underlying crime of robbery, the trial court was obligated to define the meaning of larceny for the jury. In its instructions, the trial court provided the jury with the statutory definition of larceny; see General Statutes § 53a-119; as an unlawful taking, obtaining or withholding of property from an owner. Although the instruction was not objected to at trial, the defendant claims that this instruction allowed the jury to consider statutory alternatives that have no support in the evidence adduced and, therefore, that this issue is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Again, this issue was addressed by our Supreme Court in *State* v. *Townsend,* supra.

"We have repeatedly disapproved of a trial court's reading of an entire statute when the defendant has been formally charged under less than the statute as a whole. *State* v. *Franko,* 199 Conn. 481, 493, 508 A.2d 22 (1986); *State* v. *Carter,* 189 Conn. 631, 645, 458 A.2d 379 (1983). In this case, however, the information did not specify those aspects of the underlying charge of larceny on which the state was relying.[3] The defendant has pointed to no prejudice attributable to the court's over-inclusive instruction, which did not adversely implicate a specific element of the crime with which

[3] Nor did the information in the present case specify which aspect of larceny the state intended to prove.

he was charged. It is, therefore, doubtful that the alleged error in this case is reviewable when it was not raised at trial. Compare *State* v. *Williams,* 202 Conn. 349, 362–64, 521 A.2d 150 (1987) with *State* v. *Franko,* supra." (Footnote added.) *State* v. *Townsend,* supra, 627.

As was the case in *Townsend,* we conclude that this claim is best laid to rest at the door of harmless error. "Even if this claim of error is properly here, it cannot be sustained on its merits." Id. A careful analysis of the charge as a whole,[4] leaves us with the firm conviction that "there was no reasonable possibility that the jury was misled into mistaking the issues that it was to resolve. *State* v. *Simms,* 201 Conn. 395, 416, 518 A.2d 35 (1986)." Id.; see also *State* v. *Coleman,* 14 Conn. App. 657, 681–82, 544 A.2d 194 (1988).

The defendant's final claim of error is that the state should not have been allowed to impeach the testimony of Taylor by referring to her failure to report the defendant's noncomplicity in the crime when she was interviewed by Malone. Because the defendant did not object to this line of questioning at trial, he now claims he should be granted review under *State* v. *Evans,* supra. Because the claim raised by the defendant does not implicate a fundamental constitutional right; *State* v. *Jones,* 205 Conn. 723, 738, 535 A.2d 808 (1988); we decline to review it.

Because we have found no error in the conviction of the defendant of the crime of robbery in the second degree, the conviction is affirmed and thereby stands

---

[4] Although the defendant places great emphasis on the fact that the trial court made a second reference to the three aspects of larceny, he ignores the fact that the second reference defined larceny as "taking, obtaining *and* withholding," creating conjunctive acts rather than alternatives. Clearly, this mistaken definition of the elements of larceny was to the benefit of the defendant rather than to his detriment.

as a proper basis for the defendant's conviction of a violation of probation. As to both appeals, we find that the trial court acted properly and in accordance with applicable law.

There is no error on either appeal.

In this opinion the other judges concurred.