[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO SUPPRESS STATEMENTS
CT Page 11975
 I. PROCEDURAL BACKGROUND
In the present action the state has charged the defendant with Capital Felony, Murder, Felony Murder, Burglary, Conspiracy to Commit Burglary, Larceny and Conspiracy to Commit Larceny. His trial is scheduled to begin October 2, 2000. By motion dated October 5, 1999 the defendant requests that this court suppress several statements he made during the course of custodial interrogations. In particular, he claims:
 "3. The defendant was not properly advised of [his] rights to remain silent, to have counsel present during the questioning, or to terminate questioning when he chose to.
 4. The defendant did not knowingly, voluntarily or intelligently waive [his] rights to remain silent or to be represented by counsel."
 "7. The statements were not voluntarily made because they were the product of coercion, deception, manipulation and/or overreaching by law enforcement agents."[1]
During an evidentiary hearing the state presented the testimony of those police officers who secured statements. In addition, the state introduced the written statements made by the defendant during the same time frame. The court has reviewed the hearing transcripts and exhibits as well as counsels' legal memoranda and oral arguments and concludes that the defendant's motion should be denied.
 II. STATEMENT OF THE FACTS
Based upon the testimony and evidence introduced at the suppression hearing, this court finds the following:
Sometime between October 31 and November 1, 1996, Dr. and Mrs. John Haugh were killed during an apparent burglary of their home at 50 Mohawk Drive in West Hartford. Based upon information secured during the subsequent investigation, the defendant became a suspect.
At the time of the Haugh homicides, two unrelated arrest warrants existed. The first was a 1994 Hartford warrant charging the defendant with burglary in the third degree [hereinafter Hartford warrant]. The second was an October 30, 1996 warrant charging the defendant with burglary and CT Page 11976 larceny at 90 Norwood Road in West Hartford [hereinafter 90 Norwood warrant]. State Exhibit 4. The Norwood Road address is in the same neighborhood as 50 Mohawk Drive. The burglary at 90 Norwood Road occurred on October 6, 1996.
At approximately 2:00 p.m. on November 8, 1996, West Hartford Detective Robert Moylan joined several Hartford officers as they executed the Hartford warrant. The officers picked up the defendant near his home and transported him to the Hartford police department.
Hartford Police Detective Peter Getz processed the Hartford warrant. He escorted the defendant through the booking process during which the police personnel fingerprinted and photographed the defendant. The police allowed the defendant to make a telephone call. He was released on a promise to appear by the Hartford Police Department.
During this entire procedure, which lasted from thirty to sixty minutes, the defendant was polite and calm. Neither Detective Getz nor the defendant discussed the pending charges. Although released on the Hartford warrant, the defendant remained in custody because of the outstanding 90 Norwood warrant.
At approximately 4:30 p.m., Sergeant Thomas Trzaskos arrived at the Hartford police station to transport the defendant to West Hartford. He briefly met with Detective Moylan, received general instructions concerning appropriate procedures, took custody of the defendant and, in a marked police car, drove the defendant to the West Hartford police station. During the approximately twenty minute drive from Hartford to West Hartford, the defendant initiated a conversation and asked Sergeant Trzaskos the nature of the charges against him. Pursuant to the instructions received from Detective Moylan, Sargent Trzaskos replied that the defendant had been charged with burglary and larceny. They had no other conversation during the trip.
Upon arrival in West Hartford, Sergeant Trzaskos brought the defendant to a third floor conference room. Although in custody, the defendant was not handcuffed. The defendant met Detective Michael Chaffin, an officer who investigated both the Haugh homicides and the Norwood Road burglary.
Prior to the interview, Detective Chaffin had the defendant execute a standard waiver of rights form. State Exhibit 5. First the detective obtained some biographical information. In response to the detective's preliminary questions, the defendant stated that he had a high school education and could read and write English. Detective Chaffin then advised the defendant of his rights pursuant to Miranda v. Arizona,384 U.S. 436 (1966). The defendant read those rights aloud and told CT Page 11977 Detective Chaffin that he understood each right.[2] He acknowledged each of his rights, placed his initials after each, and ultimately signed the waiver form. There was no question that the defendant was in custody pursuant to the outstanding arrest warrant.
At the time he gave his statement, the defendant was nineteen years old. He did not appear to be under the influence of any drugs or alcohol. He seemed medically healthy. He quietly and calmly responded to questions concerning the Norwood burglary and ultimately agreed to provide a written statement.
Detective Chaffin offered the defendant food, drink and use of bathroom facilities. He neither threatened the defendant nor made any promises. The defendant did not request an attorney. He never asked to terminate the interview. This entire process took approximately ninety minutes.
Detective Chaffin used a laptop computer to record the defendant's statement. State Exhibit 6. The statement was typed as it was given by the defendant who provided his responses in a narrative rather than question and answer format. The defendant offered grammatical and spelling corrections before he initialed the final form and swore to the statement's accuracy. During the interview, the defendant took his time and carefully chose the words he wanted used in the statement. The defendant was the source of all information in the statement.
Once the defendant completed State Exhibit 6, Detective Chaffin compared the modus operandi for the Norwood Road and Mohawk Drive burglaries. Detective Chaffin then told the defendant that he wanted to talk about the burglary and homicides at 50 Mohawk Drive. The defendant was aware of the subject of the interview.
In response to the questions concerning Mohawk Drive, the defendant's demeanor changed. He dropped his head, became very still and "drew into himself quite a bit." During the next two hours, the defendant compared the Norwood Road and Mohawk Drive burglaries, and eventually described the Haugh homicides. At the end of the discussion, the defendant agreed to provide a written statement.
Detective Chaffin recorded the defendant's statement by the same method he had utilized earlier that evening. Once again the defendant initialed the final form and swore to the statement's accuracy. State Exhibit 7. This statement was completed shortly after midnight.
While securing this first statement about the Mohawk Drive homicides, the officers continued to offer the defendant food and beverage. CT Page 11978 Additionally, the defendant used bathroom facilities. The defendant never asked to terminate the questioning. He never asked for a lawyer. He did not appear to be intoxicated or otherwise incoherent. By the time the defendant signed the statement, he was "emotionally drained".
Shortly after he gave this statement, the defendant accompanied Detective Paul Melanson to the central processing area. While he was being fingerprinted and photographed, the defendant had discussions with Detective Melanson wherein he discussed the clothing he wore and the weapon used at the time of the homicides. The defendant also told Detective Melanson that the clothing and weapon were still at his home. The defendant remained cooperative throughout this time. After they completed the booking procedure Detective Melanson complied with the defendant's request that he remain in the conference room rather than a jail cell. The defendant did not want to sleep. Furthermore, the defendant was allowed to place approximately ten private, uninterrupted phone calls from the conference room. One of those calls lasted forty-five minutes.
Detective Melanson left the West Hartford police station for a brief period. When he returned, he rejoined the defendant and asked him to clarify several aspects of the earlier statements. The defendant volunteered that he wanted to talk and immediately provided the requested information.
While the defendant was talking to Detective Melanson, Detective Gregory Brigandi entered the conference room. The defendant agreed to place his additional statements in writing. Consequently, Detective Brigandi completed a second waiver of rights form. Once again, the defendant provided some brief biographical information and indicated that he could read and write English. The defendant acknowledged each of his rights, initialled each, and ultimately signed the second waiver form. State Exhibit 2. The defendant unequivocally stated that he understood his rights. He appeared to be alert.
This third written statement, State Exhibit 3, again was typed as it was given by the defendant. The defendant initialed the final form and swore to the statement's accuracy. After he completed his statement, the defendant called Roger Jones and a family member. The defendant also consented to a search of his bedroom in Hartford.
On November 9, 1996 at 7:30 p.m., the defendant indicated that his aunt might be attempting to secure counsel. All questioning ended.
 III. CONCLUSIONS OF LAW
The defendant has challenged the use of his November, 1996, statements CT Page 11979 in a variety of manners. The defendant first argues that he did not make a knowing, voluntary and intelligent waiver of his privilege against self-incrimination.
In order to show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent. State v. Toste, 198 Conn. 573, 579-80,504 A.2d 1036 (1986). "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." North Carolina v. Butler, 441 U.S. 369,373 (1979). "[T]he question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' Johnson v. Zerbst,304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461 (1938)]." North Carolinav. Butler, supra, 441 U.S. 374-75.
Whether the defendant has "knowingly and intelligently waived" his rights under Miranda depends in part on the defendant's ability to understand and act upon his constitutional rights. Factors which may be considered by this court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings; his level of intelligence; his age; his level of education; his vocabulary and ability to read and write in the language in which the warnings were given; intoxication; his emotional state; and the existence of any mental disease, disorder or retardation. See State v. Toste, supra,198 Conn. 580-81. Turning to these factors individually, the following is noted:
The defendant's level of experience. There was no information that the defendant was familiar with police procedure. Despite his apparent lack of experience, there is no indication that the defendant was unable to understand both the rights he would waive and the consequences of that waiver. See State v. Pinder, 250 Conn. 385, 525-526, 736 A.2d 857
(1999) (twenty year old defendant with no prior criminal record).
The defendant's intelligence. No evidence was presented concerning any deficiencies in this regard. See State v. DeAngelis, 200 Conn. 224, 235,511 A.2d 310 (1986) quoting State v. Jones, 193 Conn. 70, 84-85,475 A.2d 1087 (1984) (the fact that the defendant was somewhat deficient in mental ability, had a psychiatric disorder and was upset emotionally did not necessarily render his statements inadmissible.)
The defendant's age at the time of the confession. Here the defendant was nineteen years old, an adult rather than a youth or juvenile. SeeCT Page 11980State v. Perez, 218 Conn. 714, 591 A.2d 119 (1991) (statement of a fourteen year old admissible).
The defendant's education. The defendant was a high school graduate. Individuals with more limited literacy levels have been capable of executing valid waivers. See State v. Gonzales, 206 Conn. 213, 217-20,537 A.2d 460 (1989); State v. Hernandez, 204 Conn. 377, 395-6, 528 A.2d 794
(1987). This level of education does not preclude a finding of voluntariness. See State v. Toste, supra, 198 Conn. 581 (the defendant operated at about a sixth to seventh grade level.).
The defendant's vocabulary and ability to read and right in thelanguage in which the warnings were given. Throughout the interrogation process, the defendant was articulate and cooperative. The interrogation was conducted in English, a language the defendant could read and write. He repeatedly indicated that he understood all aspects of the waivers and the interrogations.
The lack of any advice as to his constitutional rights. Here the advisement was complete and repeated. All police officers who testified were credible witnesses. The defendant presented no evidence to the contrary. There was no credible testimony that any detective failed to follow standard operating procedures.
The length of detention. Although the detention prior to the defendant's last confession lasted approximately fourteen hours, this, of itself, is not coercive. See State v. Hafford, 252 Conn. 274, 299-300,746 A.2d 150 (2000) (defendant was awake for twenty-seven hours during which he was interrogated eight times); State v. DeAngelis, supra,200 Conn. 235 (eleven hour interrogation); cf. Culombe v. Connecticut,367 U.S. 568 (1961) (five day interrogation).
The repeated and prolonged nature of the questioning. The defendant was not being interrogated the entire time he was at police headquarters. Rather, there were periods of time wherein the defendant was alone in the interrogation room. See State v. Shiflett, 199 Conn. 718, 508 A.2d 748
(1986) (defendant interrogated intermittently during a four day period);State v. Carter, 189 Conn. 631, 637, 458 A.2d 379 (1983) (eight hour detention, during which the police interrogated the defendant for seven hours, "though substantial in duration, does not remotely approach the length of those interrogations held to be so objectionable . . . as to warrant reversal."). The interview in the present case was not the type of grueling interrogation that warrants suppression of the resulting statement.
The use of physical punishment, such as the deprivation of food andCT Page 11981sleep. Here, the officers provided both food and beverage. There was no evidence that the defendant was either hungry, thirsty, tired or physically abused. See State v. Staples, 175 Conn. 398, 399-403,399 A.2d 1269 (1978). Although the defendant alleges that he was tired, the evidence at the suppression hearing does not support this contention. See State v. DeAngelis, supra, 200 Conn. 234 (the interrogating officer was aware that the defendant had not slept the previous evening); State v. Carter, supra, 189 Conn. 638 (although the defendant was sleepy at the conclusion of the interview, the statement was nevertheless voluntary).
The defendant's general physical, mental and emotional state. Throughout the interview, the detectives monitored the defendant's physical and verbal responses and his demeanor. He remained calm and appeared to comprehend the proceedings. The defendant received both food or beverage. He did not appear to be tired. He was neither shackled nor handcuffed. The detectives neither threatened the defendant nor made any promises. He did not appear to be under the influence of any drugs or alcohol. He appeared to be medically healthy. Although the defendant was drained at the conclusion of the proceedings, he was not overcome with emotion. See State v. DeAngelis, supra, 200 Conn. 235.
In the present case, the defendant was an adult. He could communicate well orally and had good comprehension. There is no evidence of a low IQ, organic brain damage, personality disorder or any mental deficiency. There was no evidence that the defendant was either intoxicated, medicated or under the influence of drugs at the time he made the incriminating statements. There was also no evidence that the defendant's emotional state impaired his ability to understand his rights.
The defendant unconditionally waived his Miranda rights. When asked if he understood his rights, he responded affirmatively and ultimately signed acknowledgment forms so indicating. His expressed willingness to speak constituted an explicit affirmative act evidencing waiver. See Statev. Harris, 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied,460 U.S. 1089 (1983). At no point during the interview process did the defendant request an attorney. The defendant never asked to terminate the interview process.
Waiver can be clearly inferred from the actions and words of the defendant. The defendant was given a series of options. There is no evidence that his free choice was impaired. The defendant's waiver of rights was neither contradictory nor equivocal. While with the detectives, the defendant was alert, lucid, communicative, and responsive. He seemed to have sufficient mental and intellectual capacity to comprehend the advisements, waivers, and questions propounded. His CT Page 11982 responses to the officers' interrogation were voluntarily produced and arrived at without improper inducement, threat, or deprivation.[3] The state has met its burden of demonstrating that the defendant had the capacity to understand his rights and that he knowingly and intelligently waived them by answering the detectives' questions. He unconditionally waived his Miranda rights.
In an effort to expand the rights protected by Miranda, the defendant argues that the West Hartford police detectives failed to advise him of the exact nature of all potential charges. In particular he suggests that the officers had an immediate obligation to warn the defendant that he was a suspect in the Haugh homicides. Case law does not support the defendant's proposal.
As the defendant must concede, in Colorado v. Spring, 479 U.S. 564
(1987), the United States Supreme Court specifically rejected the concept that police must advise a defendant of the exact nature of all pending charges. All that is required is that a defendant understand the basic privileges guaranteed by the fifth amendment.
"Once Miranda warnings are given, it is difficult to see how official silence could cause a suspect to misunderstand the nature of his constitutional right." Colorado v. Spring, supra, 479 U.S. 576. Just as the Supreme Court refused to read into the constitution a requirement that the police provide the defendant with a constant flow of information, this court will not require such action from the West Hartford police department. This additional information would not affect the essentially voluntary nature of the defendant's Miranda waiver. SeeColorado v. Spring, supra, 749 U.S. 573-79; State v. Jones, 205 Conn. 638,653, 534 A.2d 1199 (1987); State v. Boscarino, 204 Conn. 714, 745,529 A.2d 1260 (1987).[4]
The defendant also suggests that the West Hartford police engaged in a form of misrepresentation which invalidated his Miranda waiver. Unfortunately for the defendant, he cannot point to any deceit. Failure to provide all available information is not a form of police misconduct. Even strategic deception is allowed. Illinois v. Perkins, 496 U.S. 292,297 (1990).
Police have a legitimate right to investigate new or additional charges. McNeil v. Wisconsin, 501 U.S. 171, 175-6 (1991). Neither Miranda
nor its progeny require that officers provide suspects with anything more than their basic constitutional rights. Courts have consistently been reluctant to create additional layers of prophylaxis that would prevent police questioning. See Davis v. United States, 512 U.S. 452, 461-2
(1994). It is self evident that once an individual is advised of his CT Page 11983 rights, he is not in a position to complain that his waiver was unknowing. United States v. Washington, 431 U.S. 181 188 (1977);Patterson v. Illinois, 487 U.S. 285, 293 (1988).
Waiver can be clearly inferred from the actions and words of the defendant. The defendant was given a series of options. There is no evidence that his free choice was impaired.[5] Indeed, eventually the defendant indicated that his family was seeking the assistance of counsel. At that time, all questioning ended. Thus, his claim that he was neither advised nor aware of his constitutional rights must fail.
The defendant's final claim is that his inculpatory statements are inadmissable because they were essentially involuntary. In particular, the defendant argues that the West Hartford Police department used deception tactics which constitutionally resulted in an unknowing relinquishment of his state and federal rights against self-incrimination.[6]
Finding that a defendant has waived his rights under the Miranda
doctrine is only one aspect of the necessary inquiry. Even if the defendant knowingly relinquishes his right to remain silent, the statement must be voluntary. It is clear that the use of an involuntary confession in a criminal trial is a violation of due process. State v.DeAngelis, supra, 200 Conn. 232. The state has the burden of proving the voluntariness of any confession by a fair preponderance of the evidence.State v. Schroff, 206 Conn. 182, 195, 536 A.2d 952 (1988). This court is obligated to consider all circumstances surrounding the defendant's confession. State v. Carter, 189 Conn. 611, 622, 458 A.2d 369 (1983). The factors taken into account when assessing the totality of the circumstances include many of those used when determining the capacity of the defendant to waive his Miranda rights knowingly and intelligently.
In State v. Pinder, 250 Conn. 385, 736 A.2d 857 (1999), the Connecticut Supreme Court reviewed criteria utilized in assessing the admissibility of confessions. There the Court noted:
 We have stated that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined. . . . The ultimate test remains . . . Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his CT Page 11984 capacity for self-determination critically impaired, the use of his confession offends due process.
 State v. Pinder, supra, 250 Conn. 41 8-419 (citations omitted).
Here the conduct of law enforcement officials was not such as to overbear the defendant's will to resist. State v. Derrico, 181 Conn. 151,163, 434 A.2d 356, cert. denied, 449 U.S. 1064 (1980). "There is no evidence that the police officers who interviewed the defendant induced his admissions with threats or promises, or subjected him to protracted periods of grueling interrogation." State v. Pinder, supra, 250 Conn. 425
(internal quotations and citations omitted).
The defendant had the power to exert control over the course of the interrogation. There is no evidence that members of the West Hartford Police Department crossed the fine line between "legitimate efforts to elicit admissions and constitutionally impermissible compulsion." Moranv. Burbine, 475 U.S. 412, 426 (1986).
The defendant complains that lack of information is a form of coercion which violates state and federal due process protections. This interpretation of the due process clause is unfounded.
The sole concern of the fifth amendment is government coercion.Colorado v. Connelly, 479 U.S. 15, 170 (1986). Absent evidence that a defendant's will has been overborne, a waiver will be considered voluntary. State v. Boscarino, supra, 204 Conn. 745. Although affirmative misrepresentations are discouraged, strategic deception is not forbidden. Arizona v. Mauro, 481 U.S. 520 (1987); State v. LaPointe,237 Conn. 644, 678 A.2d 942 (1996).
The defendant's waiver of rights was neither contradictory nor equivocal. The statements were not the product of threats or coercion. The state has met its burden of demonstrating that the defendant had the capacity to understand his rights and that he knowingly and voluntarily waived them by answering the detectives' questions.
Therefore, the defendant's motion to suppress is denied.
Dewey, J.