## STATE OF CONNECTICUT *v.* LONNIE MEBANE
### (6514)

SPALLONE, O'CONNELL and NORCOTT, Js.

Argued June 20—decision released September 5, 1989

*James L. Radda,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of burglary in the first degree; General Statutes § 53a-101 (a) (1);[1] of two counts of the crime of assault in the first degree; General Statutes § 53a-59 (a) (1);[2] and of the crime of assault in the second degree. General Statutes § 53a-60 (a) (2).[3] The defendant was acquitted of the crime of attempted sexual assault in the first degree. General Statutes §§ 53a-49, 53a-70 (a). The defendant claims that the trial court erred (1) in instructing the jury regarding the defendant's failure to testify, (2) in permitting the state's attorney to comment improperly on the defendant's failure to testify, (3) in charging the jury as it did regarding identification testimony, and (4) in failing to suppress the photographic identification of the defendant made by Venus Burgess, one of the victims.

---

[1] General Statutes § 53a-101 (a) (1) provides: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ."

[2] General Statutes § 53a-59 (a) (1) provides: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-60 (a) (2) provides: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

From the evidence elicited at the trial, the jury could reasonably have found the following facts. On October 20, 1985, the victims, Venus Burgess and her two sons, Mickey, age eleven, and David, age six, resided at 42 McPadden Drive in Stratford. On that date, during the early morning hours, Burgess was asleep in her bedroom. Her son David was with her, and Mickey was in another bedroom. After she heard the sound of utensils rattling in the kitchen, she saw the shadow of a person at the top of the stairs. The person, carrying a knife in each hand, rushed into the bedroom to a point about two or three feet from Burgess. She observed that the intruder was a black male with short hair and a muscular build. The man began to stab David, and when Burgess attempted to intervene, the intruder punched her and told her to shut up and that he was going to kill her. Mickey then turned on the hallway ceiling light and came into the room. The man leaped at him, chased him back into the hallway, and, upon catching him, stabbed him. As Burgess was attempting to pull the air conditioner out of the window in an effort to escape with David, the intruder grabbed her, pulled her back onto the bed, choked her, positioned himself on top of her, ripped her pajamas and bit her breast. Meanwhile, he kept his face turned away from her. Burgess then bit the man on his wrist. At that point, the man looked directly at her, and Burgess was able to confirm her early impression that her attacker was black and that he had short hair. She was also able to estimate his height as 5 feet 8 inches and to observe that he had several moles on his face. When Burgess bit the man, he said to her, "You have to die now." She and her assailant began to struggle for possession of a serrated carving knife. During the altercation, the knife cut the fingers of both the victim and the intruder. Suddenly, during the struggle, the man jumped up and ran off. Burgess yelled out of her bedroom window for help.

When she did so, she saw her assailant getting into a car parked in front of her apartment. The car was pea green with "all these other colors on it," including red paint. The man entered the car and drove away.

Officer Herman Winkovich of the Stratford police department arrived on the scene at approximately 5:42 a.m. He found Burgess screaming and crying. Upstairs, the officers found the two children, who had both suffered stab wounds. Mickey's intestine protruded from a wound, and David had been stabbed twice in the back.

While at the hospital, to which all three victims had been transported, Burgess remembered that she had seen her assailant on two previous occasions. The first occasion was on the "day after the hurricane" (Hurricane Gloria in September, 1985) when she and her sons were at a McDonald's restaurant in Stratford. The second occasion was about two weeks thereafter, when she was with her brother, who identified the man as "Charlene Vinson's baby's father." While sitting in the lounge of the hospital, Burgess was able to recall his name.

At the Bridgeport Hospital emergency room, it was noted that Burgess had lacerations on her hand and bruises on her body, including her breast. Mickey's and David's stab wounds were determined to be life threatening, having caused internal injuries. The children's wounds presented a substantial risk of death or a serious impairment of health.

In addition to recalling that she had seen the assailant on two previous occasions, Burgess selected a photograph depicting the defendant from a photographic array on two occasions. Mickey also recognized the defendant as a person he had seen on many previous occasions and positively identified the defendant, both

in court and by choosing the defendant's photograph from an array, as the man who had stabbed him.

On the basis of Burgess' identification, the police located and arrested the defendant. He matched the description of the attacker and had the moles and cuts and bite marks described by Burgess. The police found a car matching Burgess' description located at the defendant's residence, where he was apprehended. The police also seized from the car a pair of sneakers with blood stains on the tops and a pair of khaki pants which also appeared to be bloodstained. The defendant admitted ownership of the car, the sneakers and the pants.

In his first claim of error, the defendant alleges that the trial court erred in failing to instruct the jury in accordance with the mandates of General Statutes § 54-84 (b). That statute provides in relevant part: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify."

In this case, the court charged as follows: "Now, in every criminal case there is a rule which every defendant has a right to rely on. It is the rule that no defendant is obliged to take the witness stand or to offer any testimony whatsoever. Pleading not guilty to these charges, the defendant has, in effect, denied the charges on which he is being tried and put into issue every material accusation against him stated in the information. It is the prosecution, the state, which must prove him guilty and he cannot be required to testify or disprove anything. Any accused person has the right to stand mute. The fact that he does not take the stand in defense may not be considered by you as an indication of guilt or as evidence or inference of guilt. I've already explained to you the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt. Here the defendant, Lonnie Mebane, did

not come forward as a witness or take the stand, that was his right. I charge you that you must not allow this fact in any way to prejudice him or to consider it an indication, admission, evidence or inference of guilt in any way." Thereafter, the defendant excepted, arguing that the statute requires the court to charge using the specific language of the statute, i.e., that "they may draw no unfavorable inferences."

In our analysis of the defendant's claim, we must determine whether the instruction was erroneous and, if so, whether the error was harmless. See *State* v. *Cobb*, 199 Conn. 322, 324, 507 A.2d 457 (1986); *State* v. *Sinclair*, 197 Conn. 574, 582, 500 A.2d 539 (1985); *State* v. *Thurman*, 10 Conn. App. 302, 305, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

General Statutes § 54-84 (b) serves to effectuate the fundamental constitutional right of a defendant not to testify in his criminal trial. *State* v. *Townsend*, 206 Conn. 621, 625, 539 A.2d 114 (1988); *State* v. *Sinclair*, supra. It is plain error for the trial court to fail to comply with the statute. *State* v. *Wright*, 197 Conn. 588, 595, 500 A.2d 547 (1985); *State* v. *Carrione*, 188 Conn. 681, 683, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983). The defendant has a constitutional right to such an instruction upon request. *State* v. *Thurman*, supra, 308, citing *Carter* v. *Kentucky*, 450 U.S. 288, 305, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), and *State* v. *Boulware*, 183 Conn. 444, 447, 441 A.2d 1 (1981). The right provided by General Statutes § 54-84 (b) is broader than the federal or state constitutions require. " 'While the constitutional right to a "no adverse inference" charge depends upon the defendant's request of such a charge, the statutory right is conferred upon the defendant unconditionally, in the absence of his request that the charge not be given.' [*State* v. *Sinclair*, supra. 585.] Our legislature has prescribed the language provided

in § 54-84 (b) to be the jury instruction that *must* be given to reduce speculation to a minimum. *State* v. *Cobb,* supra, 324. For this reason, our Supreme Court has 'regularly characterized as error any but the most minor departure from the language that § 54-84 (b) requires. Compare *State* v. *Tatem,* [194 Conn. 595, 483 A.2d 1087 (1984)], and *State* v. *Carrione,* supra, with *State* v. *Boulware,* supra.' *State* v. *Sinclair,* supra, 583–84." (Emphasis in original.) *State* v. *Thurman,* supra, 309; see also *State* v. *Carpenter,* 19 Conn. App. 48, 55, 562 A.2d 35 (1989). It was error in this case for the trial court not to include the express language of the statute in its charge.

A conclusion that the trial court failed to comply with the statute, however, does not end the analysis. An erroneous instruction can be deemed harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury was misled. *State* v. *Cobb,* supra, 325; *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982); *State* v. *Carpenter,* supra; *State* v. *Eaddy,* 16 Conn. App. 264, 269, 547 A.2d 912 (1988). The question is whether the charge as given conveyed to the jury the substantive meaning of the statutory requirement. *State* v. *Eaddy,* supra, citing *State* v. *Townsend,* supra, 625–26.

In this case, the court stated: "The fact that he [the defendant] does not take the stand in defense may not be considered by you as an indication of guilt or as evidence or inference of guilt." Shortly thereafter, the court stated, "I charge you that you must not allow this fact [that the defendant did not take the stand] to prejudice him or to consider it an indication, admission, evidence or inference of guilt in any way." Essentially, the defendant claims that the word "inference" should have been modified by the word "unfavorable," as it is in the statute. We must determine whether the charge as given conveyed the substantive meaning of

the statute and whether there was a reasonable possibility that the jury was misled.

In *State* v. *Cobb,* supra, the court held that the trial court's charge to the jury, that it could draw "no inference" from the defendant's failure to testify, was harmless error in that there was no reasonable possibility that the jury was misled and because the charge was sufficient to convey the substantive meaning of General Statutes § 54-84 (b). The court stated that a "no inference" charge would preclude the jury from drawing an unfavorable inference because " '[a]n instruction prohibiting any inference would also preclude an unfavorable inference.' " *State* v. *Cobb,* supra, 325, quoting *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985).

In view of the decision in *State* v. *Cobb,* supra, we conclude that the court's instruction in this case was sufficient to communicate to the jurors that they were precluded from drawing an unfavorable inference from the fact that the defendant had chosen not to testify. In fact, the strongly admonitory language used by the court probably gave the defendant more protection against the possibility that the jury would impermissibly draw an unfavorable inference than the protection that would otherwise have been afforded by the use of the specific statutory language. We hold that, in the context of this case, the error of the trial court in not employing the specific statutory language was harmless.

With regard to the defendant's other claims of error, we have thoroughly reviewed the record, transcripts and briefs and conclude that those claims are groundless. Nothing in the record discloses that the state's attorney improperly commented on the defendant's failure to testify. Nor is there any indication that the identification procedures utilized by the police failed to meet

the standards enunciated in *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); see also *State* v. *Parker,* 197 Conn. 595, 599, 500 A.2d 551 (1985); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985). Moreover, we find no error in the trial court's charge to the jury regarding identification testimony.

There is no error.

In this opinion the other judges concurred.