## STATE OF CONNECTICUT *v*. PAUL F. MILLER
### (11094)

DUPONT, C. J., O'CONNELL and LANDAU, Js.

Argued December 8, 1993—decision released May 3, 1994

*Richard T. Meehan, Jr.*, with whom, on the brief, was *Richard T. Meehan, Sr.*, for the appellant (defendant).

*John A. East III*, deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey*, chief state's attorney, and *Robert M. Brennan*, assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of larceny in the second degree in violation of General Statutes §§ 53a-119[1] and 53a-123 (a) (2),[2] and engaging in the real estate business without a license in violation of General Statutes § 20-325 (a).[3] On appeal, the defendant claims that the trial court improperly (1) concluded that there was sufficient evidence to sustain both convictions, (2) instructed the jury on his failure to testify, (3) failed to instruct the jury on the elements of obtaining property by false promise, and (4) instructed the jury on fraud. We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant represented to potential home buyers that he was a licensed real estate broker. He also represented that he owned several properties he could rent or sell to them at low cost. In fact, he was neither licensed to engage in the real estate business nor the owner of the several properties in question. As a result of these misrepresentations, the defendant wrongfully received moneys from three separate potential buyers for one or more of the following: rent, mort-

---

[1] General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . .

"(2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person."

[2] General Statutes § 53a-123 (a) provides in pertinent part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds five thousand dollars . . . ."

[3] General Statutes § 20-325 (a) provides in pertinent part: "Any person who engages in the business of real estate broker, real estate salesman or real estate appraiser without obtaining a license or certification, as the case may be, as herein provided, shall be fined not more than one thousand dollars or imprisoned not more than six months or both . . . ."

gage application fees or down payments. At trial, the defendant exercised his constitutional right not to testify on his own behalf.[4]

The defendant first claims that the evidence was insufficient to support his second degree larceny conviction because the state failed to prove (1) that he acted with the requisite felonious intent and (2) that the aggregate value of the property fraudulently obtained exceeded the $5000 statutory minimum for second degree larceny. We do not agree.

"Our standard of review for challenges to the sufficiency of evidence is well settled. We first construe the evidence presented at trial in a light most favorable to sustaining the verdict, and then determine whether the jury could reasonably have found upon the facts established and the inferences reasonably drawn therefrom, that a cumulative effect of the evidence established guilt beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Conley,* 31 Conn. App. 548, 559, 627 A.2d 436 (1993).

The jury heard evidence that the defendant placed in the Bridgeport Post an advertisement that read, "House for Sale, No Money Down." Subsequently, the defendant met individually with three potential buyers and made offers to each of them to rent, rent with an option to buy, or sell properties in the Bridgeport area. During those meetings, the defendant falsely represented that he was either a real estate broker, real

---

[4] The fifth amendment to the United States constitution provides in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . . " This amendment is applicable to the states through the due process clause of the fourteenth amendment to the United States constitution.

Article first, § 8, of the Connecticut constitution provides in pertinent part that "[n]o person shall be compelled to give evidence against himself . . . ."

estate agent[5] or mortgage broker. The evidence also demonstrated that the defendant did not possess any legal interest in the properties he attempted to rent or sell and never obtained permission from the rightful owners to negotiate their transfers.[6] Despite this, the defendant entered the premises, showed the properties to the potential buyers and, in one case, made renovations to the property. He then negotiated various contracts with the three buyers, including a rental agreement and purchase contracts. On the basis of these negotiations, the defendant received checks representing rent, mortgage application fees or down payments.

"The jury was entitled to apply its own knowledge and experience of human nature to this evidence"; *State* v. *Sinclair,* 197 Conn. 574, 578, 500 A.2d 539 (1985); and to infer therefrom that the defendant intended wrongfully to retain the victims' money. Thus, our review discloses sufficient evidence from which the jury reasonably could have found that the defendant intended to commit larceny. "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." Id., 576. "The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available." (Internal quotation marks omitted.) *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993).

The defendant also claims that the value of the money he received did not meet the $5000 statutory minimum

[5] The term "real estate agent" was apparently intended to be synonymous with real estate "broker" or real estate "salesman." Real estate agent is not a term of art recognized by General Statutes § 20-325.

[6] We note that the jury was free to disbelieve the testimony of the defendant's partner, a thrice convicted criminal, who claimed to have given the defendant a thirty day option to purchase one of the properties in question, especially in the absence of any documentation memorializing the alleged agreement.

necessary to convict him of larceny in the second degree. The state's information charged the defendant with wrongfully taking $5100 in three separate incidents. Under General Statutes § 53a-121 (b), "[a]mounts included in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense." In recognition of this, the trial court properly instructed the jury that its guilty verdict must be based on a finding that the defendant wrongfully deprived each of the victims of the money he obtained from them and that the total of all the money wrongfully obtained exceeded $5000.

The record discloses that the state presented evidence showing that the defendant wrongfully deprived each victim of money, and that the total of all the money taken exceeded $5000. Although the defendant attempted to prove an offset of certain money, the jury was free to disbelieve this evidence. Accordingly, we hold, on the basis of the evidence and the reasonable and logical inferences drawn therefrom, that the cumulative effect of the evidence was more than sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt of larceny in the second degree.

The defendant also claims that the evidence introduced at trial was insufficient to support his conviction of engaging in the real estate business without a license. Specifically, he claims that the state did not prove he was *acting for another person as required by* General Statutes § 20-311 (3). We do not agree.

This claim requires little discussion. General Statutes § 20-311 (3) defines engaging in the business of real estate as *"acting for another* and for a fee, commission or other valuable consideration in the listing for sale, selling, exchanging, buying or renting, or offering or attempting to negotiate a sale, exchange, pur-

chase or rental of, an estate or interest in real estate . . . ." (Emphasis added.) The evidence demonstrated that the defendant represented to at least one of the victims that he was a licensed real estate broker. That the defendant was not a licensed real estate broker is not disputed. The evidence further demonstrated that all the victims made out checks to either "Paul Miller Co., Inc." or "Future Investment Bankers." The jury reasonably could have concluded from this evidence that the defendant was representing himself as working for a corporate entity, which in the eyes of the law, is a person. *Burns* v. *Gould,* 172 Conn. 210, 216, 374 A.2d 193 (1977). Accordingly, we hold that the evidence presented at trial was sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of engaging in the business of real estate without a license.

In his third claim, the defendant contends that the trial court improperly instructed the jury that no adverse inferences could be drawn from his failure to testify. We agree and remand the case for a new trial.

General Statutes § 54-84 (b) requires a trial court to instruct the jury, in the absence of a request to the contrary, "that they may draw no unfavorable inferences from the accused's failure to testify."[7] In this case, the trial court instructed[8] the jury as follows: "Now, as you know, in this case the defendant did not testify. The

---

[7] General Statutes § 54-84 (b) provides: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

[8] At trial, the defendant filed the following written "Request to Charge" regarding the defendant's failure to testify: "The accused, Mr. Miller, has not testified in this case. An accused person is under no obligation to testify in his own behalf. He has a constitutional right not to testify. You may not draw any unfavorable inferences from the accused's failure to testify. Borden and Orland. Connecticut Criminal Jury Instructions § 3.6."

law does not compel a defendant to take the witness stand and testify and *no presumption of innocence may be raised,* and no unfavorable inference may be drawn from that fact that a defendant decides not to testify. A defendant is not required to establish his innocence. He need not produce any evidence, whatsoever, if he does not choose to do so." (Emphasis added.)

"In our analysis of the defendant's claim, we must determine whether the instruction was erroneous and, if so, whether the error was harmless." *State* v. *Mebane,* 19 Conn. App. 618, 623, 563 A.2d 1026, cert. denied, 212 Conn. 817, 565 A.2d 538 (1989). We begin our analysis with a look at the purpose underlying § 54-84 (b). Under our state and federal constitutions, a defendant is not entitled to an instruction that no adverse inferences may be drawn from his or her failure to testify unless such an instruction is requested. See *Carter* v. *Kentucky,* 450 U.S. 288, 305, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981); *State* v. *Branham,* 171 Conn. 12, 16, 368 A.2d 63 (1976). In 1977, however, our legislature enacted General Statutes § 54-84 (b), which "implement[ed] constitutional rights in a manner that is more stringent than the constitution itself provides." *State* v. *Sinclair,* supra, 197 Conn. 585. This is so because "[w]hile the constitutional right to a 'no adverse inference' charge depends upon the defendant's request of such a charge, the statutory right is conferred upon the defendant unconditionally, in the absence of his request that the charge not be given." Id.

The legislature's enactment of § 54-84 (b) represents a powerful mechanism a trial court must utilize as a way of protecting a defendant's constitutional privilege to remain silent in the face of criminal prosecution. *State* v. *Tatem,* 194 Conn. 594, 599, 483 A.2d 1087 (1984); *State* v. *Suplicki,* 33 Conn. App. 126, 130, 634 A.2d 1179 (1993). The prescribed statutory language helps to effectuate the constitutional right not to tes-

tify by reducing speculation on the meaning of the defendant's silence. *State* v. *Tatem,* supra, 599. Accordingly, the Supreme Court and this court, in recognition of our legislature's mandate, have "regularly characterized as error any but the most minor departure from the language that § 54-84 (b) requires." *State* v. *Sinclair,* supra, 197 Conn. 583; *State* v. *Wright,* 197 Conn. 588, 594–95, 500 A.2d 547 (1985); *State* v. *Tatem,* supra, 596; *State* v. *Dickerson,* 28 Conn. App. 290, 297, 612 A.2d 769 (1992).

In the present case, the trial court's instruction combined into a single instruction the prescribed language of § 54-84 (b) with the additional instruction that the defendant is not required to testify and that *"no presumption of innocence* may be raised." (Emphasis added.) Because only the slightest deviation from the language of the statute constitutes error; *State* v. *Sinclair,* supra, 197 Conn. 583; see *State* v. *Cobb,* 199 Conn. 322, 324, 507 A.2d 457 (1986); *State* v. *Carrione,* 188 Conn. 681, 685, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983); we hold that the trial court's charge did not comply with General Statutes § 54-84 (b) because in the middle of the instruction it inserted an improper reference to the loss of the defendant's presumption of innocence. See *State* v. *Boulware,* 183 Conn. 444, 447–48, 441 A.2d 1 (1981) (insertion of term "merely" in trial court's no adverse inference instruction found to be in error, although harmless).

"Judicial noncompliance with § 54-84 (b) does not, however, automatically warrant a reversal and a new trial." *State* v. *Townsend,* 206 Conn. 621, 625, 539 A.2d 114 (1988). Where, as in this case, a trial court deviates from the mandatory language of § 54-84 (b), we have consistently applied harmless error anaylsis.[9]

_____

[9] Where, however, there was a total omission of the "no adverse inference" instruction, this court recently refused to apply harmless error anayl-

*State* v. *Tatem,* supra, 194 Conn. 599; *State* v. *Carrione,* supra, 188 Conn. 685. Because such an error is of constitutional dimension, the state must prove beyond a reasonable doubt that, in viewing the charge as a whole, there is no reasonable possibility that the jury was misled.[10] "The question is whether the charge as given conveyed to the jury the substantive meaning of the statutory requirement." *State* v. *Mebane,* supra, 19 Conn. App. 624; *State* v. *Sinclair,* supra, 197 Conn. 584; *State* v. *Carpenter,* 19 Conn. App. 48, 55, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989); *State* v. *Thurman,* 10 Conn. App. 302, 311, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

The state contends that the entire jury instruction, both before and after the misstatement, contained proper warnings that the state must prove the defendant guilty beyond a reasonable doubt and conversely, that the defendant is not required to establish his own innocence. Accordingly, the state argues that the substantive meaning of the statute was not changed because the express language of § 54-84 (b) was given and the trial judge's instruction that "no presumption of innocence may be raised" was adequately corrected by the rest of the instruction. We are not persuaded.

The first part of the no adverse inference instruction intimated that in light of the defendant's failure to tes-

sis. *State* v. *Suplicki,* supra, 33 Conn. App. 126. In support of its holding, the court stated that *"[t]he unconditional language of the statute* is a legislative mandate and the failure to use that language is a pivotal aspect of the defendant's privilege against self-incrimination. The statutory language is based on a constitutional right, and its omission can never be harmless." (Emphasis added.) Id., 130.

[10] Our harmlessness analysis is the same regardless of whether the defendant requests a no adverse inference charge or, in the absence of such a request, the trial court provides the mandatory instruction under § 54-84 (b). See *State* v. *Cobb,* supra, 199 Conn. 325 n.2; *State* v. *Sinclair,* supra, 197 Conn. 582.

tify, he was no longer presumed innocent. Immediately following this, however, the trial court provided the jurors with a verbatim recitation of the mandatory language under § 54-84 (b). At a minimum, the trial court's instruction created confusion as to the meaning of the defendant's silence; at worst it gave the jurors license to draw an inference of guilt in direct violation of the letter and spirit of § 54-84 (b). In making a connection between the defendant's failure to testify and the loss of his constitutional right to be presumed innocent, the instruction not only altered the substantive meaning of the statutory requirement, it turned it on its head.

We emphasize that in appeals not involving an instruction of constitutional dimension, an improper charge constitutes harmful error only if the defendant shows that it is reasonably *probable* that the jury was misled. *State* v. *Hines,* 187 Conn. 199, 209–10, 445 A.2d 314 (1982). In appeals like this one, however, where an instruction of constitutional dimension is implicated, an entirely different standard is employed. For a charge to be harmless error, the state must show that there " 'is no reasonable *possibility* that the jury was misled.' " (Emphasis added.) *State* v. *Tatem,* supra, 194 Conn. 599. This is an extremely high burden. We know of no other legal standard where the mere *reasonable possibility* of an occurence constitutes error.

We recognize that " '[i]t is well established that individual instructions are not to be judged in artificial isolation from the overall charge.' " *State* v. *Hines,* supra, 187 Conn. 206. With that in mind, we have carefully canvassed the entire jury instruction and find that the trial court provided only one instruction pertaining to the defendant's silence. In that instruction, the trial court conveyed two conflicting concepts relating to the defendant's decision not to testify. One principle was that "no presumption of innocence may be raised" and

the other was that no adverse inferences should be drawn from the defendant's silence. In the absence of an additional instruction unequivocally informing the jurors that they should draw no adverse meaning or inference from the defendant's silence, we are convinced that there is a reasonable *possibility* that the single, contradictory instruction could have misled the jury. " 'We cannot assume that lay jurors know what lawyers and judges know.' " *State* v. *Tatem,* supra, 194 Conn. 600, quoting *People* v. *Harris,* 52 Mich. App. 739, 741, 218 N.W.2d 150 (1974).

We find support for our position in *State* v. *Carrione,* supra, 188 Conn. 681. In *Carrione,* the trial court instructed the jurors that they were "to draw no legal impressions from the fact that [the defendant] did not take the stand and testify . . . ." (Internal quotation marks omitted.) Id., 684. The Supreme Court found the term no "legal impression" in place of no "legal inference" was a violation of the statute, but nonetheless harmless error. Id., 685. Critical to the court's analysis was its reliance on a subsequent instruction to the jury that they were " 'not to penalize [the defendant] for not testifying and taking advantage of her constitutional right.' " Id., 685–86. This supplemental instruction, according to the court, "served . . . to make the earlier use of erroneous language harmless." Id.

In this case, the record is devoid of a supplemental instruction that might have remedied the confusion inherent in the no adverse inference instruction. Even if it is assumed, as the state contends, that the instruction as a whole conveyed to the jury that the defendant was presumed innocent, the no adverse inference instruction reasonably could have been understood to mean that the defendant loses that presumption *if* he chooses not to testify. Accordingly, we conclude that the charge as given failed to convey to the jury the sub-

stantive meaning of the statute and, when the charge was viewed as a whole, it was reasonably possible that the charge could have misled the jury.

We do not reach the defendant's other claims because it is not likely that they will arise on retrial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.