[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his amended petition, dated November 8, 2000, further amended March 27, 2001, petitioner seeks a writ of habeas corpus claiming that he is being confined by respondent and that such confinement is illegal and in deprivation of his rights under the Constitution of the United States and the State of Connecticut.
Petitioner's claim that his right to sentence review should be restored has been found in his favor, without objection, and judgment entered resulting in the restoration of such right. For reasons hereinafter stated, all other claims have been found in favor of the respondent and the petition is dismissed.
The basic facts underlying this case may be summarized as follows.
In 1991, petitioner was convicted of the crime of larceny in the second degree and engaging in real estate business without a license and sentenced to a period of imprisonment. The conviction was appealed and petitioner was released on bond pending results of the appeal.
While the appeal was pending, in the United States District Court for the District of Connecticut, petitioner was found to have violated federal probation. Petitioner surrendered his state appellate bond and in March, 1994, commenced serving an eighteen month term of imprisonment for the violation of probation.
On May 2, 1994, while petitioner was serving the federal sentence, the State Appellate Court reversed his conviction and ordered a new trial.State v. Miller, 34 Conn. App. 250 (1994), cert. denied 230 Conn. 902
(1994).
By letter dated June 30, 1994, Assistant State's Attorney Robert M. CT Page 8203-eo Brennan notified the clerk at G.A. 2 Bridgeport with a copy to petitioner and his attorney that petitioner's conviction had been reversed. The letter requested that the case be placed back on the docket of the court. No detainer was filed with the federal correctional authorities.
Petitioner was released from federal custody in September, 1995. He was then retried in G.A. 2 and again convicted on the state charges in November, 1995. As a result of this conviction, petitioner was sentenced to a term of imprisonment which he is now serving in the custody of respondent.
The second conviction was appealed. The Appellate Court affirmed this conviction. State v. Miller, 56 Conn. App. 191 (1999), cert. denied252 Conn. 937 (2000).
The petition sets forth a number of claims and raises a number of issues. Issues not briefed, however, will not be considered. Shaw v.Planning Commission, 5 Conn. App. 520, 525 (1985). All issues briefed will be duly considered.
 I
The petitioner claims that he was denied his right to a speedy trial under the terms of the Interstate Detainer Act (IAD) and C.G.S. §54-186. His related claim is that he was denied a speedy trial in violation of his rights under Article 1st § 8 of the Constitution of Connecticut and the General Statutes.
All of the evidence indicates that after the reversal of petitioner's conviction by the Appellate Court in May, 1994, and while he was confined in the federal institution at Pennsylvania, no formal detainer was ever filed against him by the prosecuting authorities of this state. A detainer is a document which puts the officials at which a prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon release from prison. For purposes of the agreement on detainers (IAD), C.G.S. § 54-186, Article IX must be liberally construed. State v. Milton, 26 Conn. App. 698, 708 (1992). There is nothing to indicate that the State of Connecticut formally or informally notified the authorities at the federal prison at Allenwood that the state intended to bring petitioner back for trial upon his release from incarceration. It cannot be found that a detainer, constructive or otherwise, was ever filed by any agency of the State of Connecticut with the authorities at Allenwood. Although the IAD expresses a policy favoring detainers, there is nothing to indicate that the state CT Page 8203-ep had any legal or enforceable duty to file a detainer under the circumstances of this case.
Since there was no detainer, petitioner cannot be entitled to relief under the Act.
Petitioner claims he attempted himself to file a detainer and to notify the state of his desire for a speedy trial. The evidence indicates that, after receiving a copy of Attorney Brennan's letter of June 30, 1994, petitioner sent a letter dated July 13, 1994 to the clerk at G.A. 2 stating that Attorney Brennan had been named in a civil action brought by petitioner entitled Paul F. Miller v. United States Probation Department,et al. Petitioner requested that Attorney Brennan be disqualified from the case. There is nothing in the letter indicating that petitioner was requesting a speedy trial.
On May 25, 1995, petitioner filed with the same court a document entitled praecipe to enter order of dismissal. This document requested that the court enter an order of dismissal in his case based upon his timely request for speedy trial. The document cited C.G.S. § 54-82c
(a) and § 54-82d and indicated that the court no longer had jurisdiction in the matter. Petitioner followed up this document with a letter to Mary Lou Reck, a clerk at G.A. 2, reiterating his claim that the charges should be dismissed and indicating that his letter of July 13, 1994, concerning the alleged conflict with Attorney Brennan, was in fact a speedy trial request.
The requirements of the IAD for speedy trial requests are specific and are set forth in Article III § 54-186. A prisoner is required to cause to be delivered to the prosecuting officer and the appropriate court, written notice of the place of his imprisonment and his request for a final disposition. The Act requires that the notice and request for final disposition or speedy trial be given to the warden or other official having custody-of the prisoner, who is then required to forward it together with a certificate stating the term of commitment under which the prisoner is being held, the time served, the time remaining to be served together with other information to the prosecuting officer and the court.
Petitioner testified that he contacted the federal authorities requesting a speedy trial. There is no evidence that he followed the procedure specified in the IAD, what authorities he contacted and what information was given. In this connection it is noted that the obligations imposed on the official having custody of a prisoner under CT Page 8203-eq the provisions of C.G.S. § 54-82c (c) differ from those imposed on such officer under the IAD § 54-186, Article III (c). This section of the IAD requires the officer having custody of the prisoner to promptly inform him of the source and content of any detainer lodged against the prisoner and his right to request a final disposition. Section 54-82c (c) on the other hand requires the official having custody of the prisoner to promptly inform the prisoner of any untried indictment or information against him concerning which the officer has knowledge of and the prisoner s right to request a final disposition. State v. Milton, supra,26 Conn. App. 704. Because of the requirements of this statute, the court may inquire into the knowledge which the official might have concerning charges pending against the prisoner. Id.
Because of the different requirements, under the LAD, even if it could be found that petitioner brought proper notice of the pending charges in Connecticut to the appropriate federal official at Allenwood, no action could be taken since no detainer had been filed.
Although Article IX of the Act requires that the IAD be liberally construed, it cannot be found that petitioner complied with the notice requirements of the Act. He merely flooded the clerk's office with papers containing legalistic jargon which were stamped and filed. Also, the letter of May 28, 1995 to Mary Lou Reck, indicates that petitioner was not then incarcerated, but living in Easton, Connecticut.
Adding to the confusion in his letter of May 28, 1995, petitioner claimed an order of dismissal should have been entered under the provisions of C.G.S. §§ 54-82c and 54-82d. These statutes do not apply to petitioner's situation. These statutes apply only to persons who are imprisoned in correctional institutions in this state. Petitioner was confined to a federal prison in Pennsylvania.
Petitioner also claims that he is entitled to habeas relief under the provisions of Article 1st, § 8 of the State Constitution which provides in part that "[i]n all criminal prosecution, the accused shall have a right . . . to a speedy, public trial."
The petitioner provides no case law or support for the proposition except to say that our Supreme Court has on occasion recognized that the State Constitution may offer rights more expansive than the Federal Constitution.
Here, it cannot be found that petitioner reasonably claimed a right to a speedy trial. It cannot be found that he suffered any loss of rights CT Page 8203-er guaranteed by the constitution of our state.
The assistant state's attorney representing respondent has raised the issue as to whether or not petitioner is entitled to litigate the speedy trial claim by way of habeas corpus petition since such claim was not raised at trial or on direct appeal. The claim is that petitioner is procedurally defaulted from litigating this issue.
A review of the decision in State v. Miller, supra, 55 Conn. App. 191
confirms that the speedy trial issue was not raised in this appeal. Where a party fails to press a claim of error at the appropriate time, such failure could constitute a waiver of the right to raise the issue later unless a substantial injustice can be found. State v. Evans, 165 Conn. 61,64-66 (1973). Petitioner could have raised the speedy trial claim before the trial court or by direct appeal. He failed to do so and now seeks to raise this issue by way of a petition for habeas corpus. The appropriate standard for reviewability of a claim, constitutional or otherwise, not raised before sentencing or on direct appeal is that found in Wainwrightv. Sykes, 433 U.S. 72, 97 Sup. Ct. 2497, 53 L.Ed.2d 594 (1997). This is the "cause and prejudice" standard. Jackson v. Commissioner ofCorrection, 227 Conn. 124, 133-34 (1993). "The petitioner must show good cause for his failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation." Baez v.Commissioner of Correction, 34 Conn. App. 236, 240-41 (1994). Where the issue has been raised, as in this case, it is the duty of the habeas court to make a determination as to whether cause and prejudice exists.Id.
With respect to the issue of "cause", there has been no allegation or showing that petitioner was in any way prevented from raising the speedy trial issue before the trial court or on direct appeal . . . As to whether petitioner has suffered any "prejudice" from his failure to raise the claim at the proper time, it has already been determined that the speedy trial claim is invalid. Therefore, it must be concluded that petitioner suffered no prejudice from the failure to raise the issue and that he is procedurally defaulted from raising this claim by way of habeas corpus.
 II
Petitioner claims that he is entitled to credit for time served in federal custody as a result of the state court's sentence that was later reversed. Credit for pretrial confinement is authorized by C.G.S. §18-98 (d). Under this statute pretrial credit is allowed only when a CT Page 8203-es prisoner is confined in a facility administered by the commissioner of correction of this state. Hammond v. Commissioner of Correction,259 Conn. 855, 862-63 (2002).
Petitioner was released on an appeal bond after his first conviction in 1991. He was next confined in a federal facility after the determination that he had violated his federal probation. His next incarceration occurred after his second conviction in the state court in 1995. There is no statute or other authority which would allow credit for the time spent in federal custody since petitioner was not then confined in a facility administered by the commissioner of correction.
This identical claim was concluded in a mandamus action which was dismissed after a conclusion that the commissioner of correction had no legal duty to credit petitioner with time spent in federal prison. Millerv. Warden, Docket No. CV00-0556724-S, Judicial District of New London, March 14, 2002.
Petitioner claims that due process of law and fundamental fairness requires that he be credited with the time served at Allenwood as a result of a state court conviction which was reversed. Under the circumstances of this case, neither due process nor fundamental fairness requires that he be awarded credit against his Connecticut sentence for time spent incarcerated for violating his federal probation. The statute does not allow such credit and due process is not involved here. Id. 879.
Fundamental fairness does not appear to be a factor in this case. In reversing his first conviction, the Appellate Court found that there was sufficient evidence to convict petitioner of the crimes charged but reversed and remanded for a new trial because of the trial judge's faulty instruction to the jury involving C.G.S. § 54-84 (b). State v.Miller, supra, 34 Conn. App. 250. This conviction, although later reversed, no doubt triggered the federal violation of probation charge. Petitioner, however, was found to be in violation of his federal probation only after an evidentiary hearing attended by Attorney Brennan.
Upon retrial, petitioner was again convicted of the state charges.State v. Miller, supra, 56 Conn. App. 191. Where petitioner has violated both the laws of the United States and the State of Connecticut, fundamental fairness, even if it could supercede the statute, does not require that he be given credit on the state sentence for time that he was incarcerated on the federal sentence. CT Page 8203-et
 III
Petitioner claims that he was deprived of due process of law due to the conflict of interest of the prosecuting attorney, Robert Brennan. It is alleged that attorney Brennan, who prosecuted both trials against petitioner, did so under a conflict of interest in which "his own personal interest in avoiding either a judgment or professional reprimand conflicted with his duty to do justice." It is claimed that the attorney had a duty to bring the conflict of interest to the attention of the court and that he did not do this.
"[T]he prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates. The prosecutor is not an ordinary advocate. His (or her) duty is to see that justice is done and to refrain from imposing methods calculated to produce prejudice and wrongful decisions by the jury." State v. Dillard, 66 Conn. App. 238, 247
(2001).
The claim here is that the prosecutor's conflict was manifested in the attorney's recommendation to the clerk that petitioner's trial not be scheduled until he had completed his period of federal incarceration and despite petitioner's efforts, no action was taken to accelerate his return to Connecticut for trial.
Attorney Brennan testified that he was unfamiliar with the detainer procedure, he was involved in other cases, and his failure to seek a detainer was not based upon malice toward petitioner.
In deciding claims of this nature, the "standard of review of a claim of prosecutorial misconduct that allegedly results in unfair trial is well-established. `[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to made the resulting conviction a denial of due process . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct.' (Internal quotation marks omitted.) State v. Chasse, 51 Conn. App. 345,355, 721 A.2d 1212 (1998), cert. denied 247 Conn. 960, 723 A.2d 816
(1999)." State v. Jefferson, 67 Conn. App. 249, 266 (2001).
No evidence was presented to prove that petitioner did not receive a fair trial and what evidence does exist concerning Attorney Brennan's CT Page 8203-eu conduct fails to establish that petitioner's trial was unfair.
Although the claims might differ, petitioner was afforded an opportunity to press his claim of prosecutorial misconduct in a hearing before Honorable Eddie Rodriquez, Jr. on August 1, 1995. After this evidentiary hearing, it was ruled that petitioner had not proven his claim against Attorney Brennan and he was not disqualified from the case.
Also, the claim of prosecutorial misconduct, like the speedy trial issue, was not raised on appeal. The issue could appropriately have been raised by direct appeal as was done in State v. Jefferson, supra, andState v. Chasse.
There is no allegation or showing that petitioner was prevented from raising this issue on appeal and even if it were raised, it does not appear that it would have afforded petitioner any basis for relief. He has suffered no prejudice from the fact that is was not appealed. Jackson v.Commissioner of Correction, supra, 227 Conn. 133-34.
Accordingly, it has not been proven that the claim of prosecutorial misconduct affords any basis for a writ of habeas corpus.
 IV
Petitioner claims that his confinement by respondent is illegal and that he is entitled to the relief sought because of ineffective assistance of counsel in violation of his rights under the Constitution of the United States and the State of Connecticut.
As a defendant in a criminal proceeding, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of the criminal proceeding. Strickland v.Washington, supra, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984). This right arises under the Sixth and Fourteenth amendments to the United States Constitution and Article 1st, § 8 of the Connecticut Constitution." Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995).
The general standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, supra, 466 U.S. 668. "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, CT Page 8203-ev and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
Only if the petitioner succeeds in this herculean task will he receive a new trial. Denby v. Commissioner of Correction, 66 Conn. App. 809,812-813 (2001).
 A.
It is petitioner's claim that he was denied effective assistance of counsel because his attorney failed to raise the detainer claim or to seek a speedy trial. It is claimed that after the reversal of petitioner's first conviction, and while he was confined in the federal institution, his attorney neglected and abandoned him by failing to request a detainer or to seek a speedy trial.
Petitioner has not alleged the name of the attorney who it is claimed was constitutionally ineffective in failing to seek a detainer after petitioner's conviction was reversed. Attorney Burton Weinstein represented petitioner at the time of his first trial. Attorney Richard T. Meehan, Jr. represented petitioner on the appeal and Assistant State's Attorney Brennan sent a copy of his letter of June 30, 1994 to the clerk at G.A. 2 requesting that the case be placed back on the docket for a new trial to Attorney Meehan.
There is nothing to indicate that Attorney Weinstein was representing petitioner at the time his conviction was reversed. There has been no CT Page 8203-ew showing that Attorney Meehan, then serving as appellate counsel, or the attorney that represented petitioner in the Federal Court, had any duty to seek a detainer or to request a speedy trial. Since it is not been proven that these attorneys had any duty to take the action which petitioner claims they should have taken. It cannot be found that their performance was deficient.
At his second trial, petitioner was represented by Attorney H. Jeffrey Beck. It does not appear that Attorney Beck raised the speedy trial issue when the case was called to trial. In the unsuccessful appeal of his second conviction, petitioner was represented by Attorney William F. Gallagher with Attorney Thomas J. Airrone and Attorney Beck on the brief The speedy trial issue was not raised in the appeal. It is claimed that in not raising the speedy trial issue, the performance of these attorneys was constitutionally deficient. The evidence, however, does not permit such a conclusion. Also, under the Strickland standard petitioner is obligated to prove actual prejudice as a result of any deficient performance. Here it has been determined that petitioner has not proven that he was entitled to a claim of dismissal of any violation of his alleged right to a speedy trial.
For these reasons, it must be concluded that petitioner is not entitled to relief on the basis of his claim of ineffective assistance of counsel because of his attorney's failure to raise the issue of the detainer or to seek a speedy trial or request a dismissal on the basis of a denial of a speedy trial.
 B.
Petitioner claims that he was deprived of effective assistance of counsel due to his trial counsel's failure to raise issues relating to the conflict of interest of the prosecuting attorney and the prosecutor's interference with petitioner's speedy trial rights. The evidence indicates that Attorney Beck did press that claims involving Attorney Brennan's alleged conflict of interest and that a hearing was held before Judge Rodriguez on August 1, 1995. At that hearing, petitioner was called to testify and given an opportunity to place before the judge his claim that the state's 1attorney had a conflict of interest and that he should be removed from prosecuting the case. This claim was denied by the court. The claim of conflict of interest and Judge Rodriguez's decision on the claim became part of the law of the case and must have been apparent to the trial judge, Judge Kavanewsky. The claim that the conflict of interest was never brought to the attention of the court has not been proven. CT Page 8203-ex
Whether or not it was ineffective assistance of counsel not to raise the speedy trial claim has already been discussed. There was no evidence that the prosecuting authority had any duty to seek a detainer while petitioner was in federal custody. There was no showing that Attorney Brennan's failure to seek a detainer was based upon malice or vindictiveness towards petitioner.
It cannot be found that petitioner has proven that he was entitled to a speedy trial or dismissal for any violation of his right to a speedy trial. The claim with respect to a violation of petitioner's right to a speedy trial is without merit. The failure to raise a claim which is without merit cannot constitute deficient performance under Strickland.Williams v. Manson, 195 Conn. 561, 564 (1985).
The allegations that counsel's failure to raise the issue of conflict of interest and the prosecutor's actions concerning the detainer and the related issue of a denial of speedy trial have not been proven and afford no basis of the relief sought.
 C.
It is also claimed by petitioner that he was deprived of effective assistance of counsel due to his trial counsel's failure to introduce into evidence an exculpatory contract. Petitioner also alleges that his attorney's failure to file a motion to compel disclosure of exculpatory evidence and uncharged misconduct constituted inefficient assistance of counsel.
Petitioner claims that Attorney Beck, his trial attorney, did nothing to secure adequate discovery in the case. It is also claimed that the attorney's performance was deficient because he failed to offer into evidence during the trial a contract between petitioner and Alfred Bianco. It is claimed that this contract would have established that petitioner had a legal interest in one of the houses they attempted to sell. Petitioner argues that if the jury had been informed petitioner had such an interest "perhaps" it would not have concluded that he committed larceny since the state was proceeding on a theory that petitioner was attempting to sell property in which he had no legal interest.
Bianco, with whom it is claimed petitioner had the contract of sale, was unavailable to testify at the time of the second trial and the contract could only be admitted into evidence if petitioner took the stand and authenticated the document. Petitioner did not testify at CT Page 8203-ey trial. It is claimed that Attorney Beck was inefficient in that he failed to file a motion concerning uncharged misconduct. This made petitioner's testimony risky because it was not possible to determine what the state would go into on cross examination.
At trial, a Mr. Ofilli testified that he contacted petitioner with respect to the purchase of real property at 1020 Old Town Road, Trumbull, Connecticut. Ofilli stated that he met with petitioner and that petitioner represented that he owned the subject property.
In attempting to work out a purchase of the property, Ofilli gave petitioner a check in the amount of $3,000 together with three checks in the amount of $400 each. The understanding was that in order to facilitate the financing of the purchase of the property at Old Town Road, petitioner would use the $400 checks to assist in refinancing properties then owned by Ofilli with the Bowery Bank.
Subsequently Ofilli became concerned about the situation. He checked with the Bowery Bank and learned that petitioner never applied for refinancing and it could be inferred that he kept the $1,200 given to him by Ofilli for that purpose. Payment was stopped on the $3,000 check.
A title searcher testified that neither petitioner nor any of his companies ever held legal title to the property at 1020 Old Town Road as claimed by petitioner. Under such circumstances, evidence that petitioner had a contract interest in the property would be exculpatory. Although Bianco was not available at the second trial, his testimony at the first trial was read to the jury. In this testimony, Bianco stated that he owned the property in question. He further testified that at the time petitioner was dealing with Mr. Ofilli, petitioner did have a valid contract to purchase the property. Bianco's testimony confirmed the substance of the exculpatory contract. In his testimony, Bianco indicated that in attempting to negotiate a sale to Ofilli, petitioner's interest in the property was recognized confirming petitioner's rights under the contract.
With respect to the claim that Attorney Beck was deficient in not moving for a disclosure of uncharged misconduct, it does not appear that petitioner has suffered any prejudice as a result of this failure.
It is pure speculation that if the motion had been filed, Attorney Beck would have been successful in keeping from the jury uncharged misconduct which would have enabled petitioner to testify with impunity. CT Page 8203-ez
More importantly, the basic terms of the exculpatory contract, confirming that petitioner had a contract interest in the property at the relevant time, was clearly placed before the jury by the reading of Bianco's testimony. The contract itself would have been cumulative and would have added nothing of substance to petitioner's defense.
There is nothing in Bianco's testimony or in the contract that relates to the $1,200 received by petitioner in connection with refinancing Ofilli's property with the Bowery Bank.
There was no evidence that petitioner suffered any prejudice as a result of Attorney Beck's failure to compel the disclosure of exculpatory evidence.
Since it has not been proven that petitioner suffered any actual prejudice as a result of counsel's failure to file the motions to compel disclosure of exculpatory evidence and uncharged misconduct, this claim could not be the basis for the relief sought.
 V
Petitioner claims that he is actually innocent of the crime of larceny in the second degree. This claim is based upon the theory that he did, in fact, have a legal interest in the property at 1020 Old Town Road which he attempted to sell and if the value of the funds which he might have derived from dealing with that property were subtracted from the total, he could have appropriated the balance would be less than that required for a conviction of larceny in the second degree.
Petitioner was convicted of larceny in the second degree in violation of C.G.S. §§ 53a-123 (a)(2) and 53a-121 (b). In order for him to be convicted of this crime as charged, it would have to be found that the value of the properties stolen exceeded $5,000 in value. Section 121(b) allowed the state to aggregate the money appropriated in petitioner's scheme or course of conduct to reach the $5,000 required for conviction of larceny in the second degree. The state alleged that petitioner appropriated to himself, or wrongfully obtained, money from Mr. Ofilli, Mr. Abbot and Mrs. Johnson and that the total obtained by petitioner exceeded $5,000.
"A substantial claim of actual innocence is cognizable by way of a petition for a writ of habeas corpus, even in the absence of proof by the petitioner of an antecedent constitutional violation that affected the CT Page 8203-fa result of his criminal trial." Summerville v. Warden, 229 Conn. 397, 422
(1994). To prevail on a claim of actual innocence at a habeas corpus trial, petitioner must prove such innocence by clear and convincing proofMiller v. Commissioner of Correction, 242 Conn. 745, 798 (1997).
Considering all of the evidence it cannot be found that petitioner has proven actual innocence of the larceny charge by clear and convincing proof
The only evidence at the criminal trial of petitioner's interest in the subject property was Bianco's testimony. Bianco, a convicted felon, was a business associate of petitioner. Bianco's testimony, therefore, was suspect and could have been rejected by the jury. The contract which came before the habeas court does not add much more when the credibility of the parties is considered.
Assuming, however, that Bianco is believed and that petitioner, although he did not own the property as he claimed, had an interest in the Old Town Road property actual innocence still has not been proven.
The value of the Old Town Road property as alleged in the petition does not appear to be relevant. The evidence was that petitioner received a $3,000 check from Ofilli as a deposit on the property and that Ofilli gave petitioner three $400 checks so that he could assist in refinancing Ofilli's other property with the Bowery Bank. The refinancing was to facilitate the purchase of the Old Town Road property by Ofilli.
Although there was evidence that petitioner attempted to cash the $3,000 check, it does not appear that the check cleared before a shop-payment order was filed. It could not then be found that petitioner successfully appropriated the $3,000. There was evidence, however, that petitioner never filed anything with the Bowery Bank to attempt refinancing of Ofilli's property and that he did appropriate the three $400 checks totaling $1,200 to himself with the intent to permanently deprive Ofilli of this money.
This $1,200 added to the other funds which it could be found pursuant to C.G.S. § 53a-121 (d) that petitioner took raised the total to over the $5,000 required for conviction of larceny in the second degree. It must then be concluded that petitioner has failed to prove actual innocence as alleged. CT Page 8203-fb
 V
Petitioner has raised two similar interrelated claims concerning CGS § 53a-39b. He claims that he has been deprived of his right of access to the courts as guaranteed by Article 1st Sec. 10 of the Constitution of the State of Connecticut[1] and the First Amendment to the United States Constitution[2] because of the court's refusal to hear his request for a sentence modification over the objection of the state. Petitioner also claims that the state's refusal to consent to sentence modification has resulted in a deprivation of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution[3] and Article 1, Section 8 of the State Constitution.[4]
Both of these claims involve CGS § 53a-39 (b) which provides:
 At any time during the period of a definite sentence of more than three years, upon agreement of the defendant and the state's attorney to seek review of the sentence, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced.
It does not appear to be in dispute that petitioner, who received a definite sentence of more than three years, filed a motion for sentence modification as allowed by § 53a-39 (b). The state did not agree to the modification requested and the court denied the modification.
Petitioner could have appealed these issues directly to the Appellate Court. State v. Adam H., 54 Conn. App. 387 (1999), cert. denied251 Conn. 905 (1999). No evidence of good cause and actual prejudice has been presented and it must be concluded that petitioner is procedurally defaulted and not entitled to claim these issues by way of a petition for a writ of habeas corpus. Baez v. Commissioner of Corrections, supra,34 Conn. App. 240-241.
Ordinarily, a trial judge is without jurisdiction to modify a lawful sentence imposed on a defendant who has, as petitioner in this case, begun to serve such sentence. The legislature however may confirm jurisdiction on a sentencing job to modify an executed sentence. Statev. Lombard, 19 Conn. App. 631, 634 (1989), cert. denied 215 Conn. 508
(1989). CT Page 8203-fc
Under the law in effect at the time petitioner was sentenced, a person receiving a sentence of more than three years could apply for a review of that sentence under CGS § 51-195. Applications for sentence review under this statute would have to be filed within thirty days from the date sentence was imposed. The scope of such review would also be limited to a determination as to whether the sentence was appropriate or disproportionate in light of the circumstances existing at the time sentence was imposed. Connecticut Practice Book § 942 (now § 43-28). The sentence review division does not and did not then have the discretionary power of clemency and could not consider post-sentencing factors such as betterment of character and attitude. State v. Hats,21 Conn. Sup. 448, 451 (1958).
It is entirely possible that a person serving a sentence of over three years who had sentence review, or was not eligible for such review, and was not yet eligible for parole could merit a reduction in sentence. It is logical to conclude that the legislature enacted such in § 53a-39
(b) to enable a person who fell within this limited class to seek a review of sentence. The statute requires the agreement of the state before a review may be had and a showing of good cause before the sentence could be modified.
Petitioner argues that the statute gives the state the right to veto petitioner's application for a review of his sentence. It is more reasonable to conclude that the legislature expanded petitioner's right of sentence review by amending § 53-39 to allow persons, such as petitioner, serving a sentence of more than three years, an opportunity for review. In amending § 53a-39 by adding subsection (b) the legislature required that the state agree that the sentence may be reviewed. This does not appear to be an unreasonable and irrational condition. In considering the constitutionality of § 53a-39 before subsection (b) was added, the Supreme Court stated "[a] party contesting a statute's constitutionality has a heavy burden to prove unconstitutionality beyond a reasonable doubt" In examining the rationality of a legislative classification we are bound to defer to the judgment of the legislature unless the classification is clearly irrational and unreasonable." (Citations omitted.) Mainer v. Liberty,214 Conn. 717, 724 (1990).
Aside from the general language of the constitutional section relied upon, petitioner has cited no authority directly in point in support of his argument that his constitutional rights have been violated by the Court's refusal to hear his request for sentence modification or the CT Page 8203-fd state's refusal to consent to sentence modification.
It cannot be found that petitioner's constitutional rights have been violated as alleged. Petitioner, therefore, are not entitled to the relief sought on the basis of these claimed violations of his constitutional rights.
 VII
During the hearing on the petition in open court, on December 10, 2001, the reasons therefore being placed on the record, it was found that petitioner's right to sentence review should be restored and it was so restored. On all other claims, the issues have been found for the respondent.
Accordingly, the petition is dismissed.
 ___________________ Joseph J. Purtill Judge Trial Referee